FRYMIRE ENGINEERING COMPA-
NY, INC. by and through real party in
Interest, LIBERTY MUTUAL INSUR-
ANCE COMPANY, Petitioners,

v.

JOMAR INTERNATIONAL, LTD.
and Mixer s.r.l., Respondents.

No. 06–0755.

Supreme Court of Texas.

Argued Dec. 4, 2007.

Decided June 13, 2008.

Rehearing Denied Aug. 29, 2008.

Stewart Kelvin Smith, Attorney at Law, Irving, TX, for Petitioners.

Idolina Garcia, Christopher P. Hansen, Hilaree A. Casada, Hermes Sargent Bates, LLP, Dallas, Douglas R. Hafer, Kelly J. Curnutt, Curnutt & Hafer, LLP, Arlington, TX, for Respondents.

Justice WILLETT delivered the opinion of the Court.

Over a century ago, we declared that "the courts of no state have gone further" than Texas "in applying the doctrine of subrogation" because "our decisions recognize the doctrine . . . to its fullest extent."[1] Today's case requires us to decide whether this doctrine applies to a subcontractor seeking to recoup contractual payments from alleged third-party tortfeasors. We hold that it does, provided the traditional requirements of subrogation are satisfied. Accordingly, we reverse the court of appeals' judgment and remand to that court for further proceedings.

## I. Background

The owner of the Renaissance Hotel in Dallas hired Price Woods, Inc. ("Price Woods") as general contractor to remodel a hotel meeting room. Price Woods in turn subcontracted the HVAC and sheet

---

**1.** *Faires v. Cockrill,* 88 Tex. 428, 31 S.W. 190,    194 (1895).

metal work to Frymire Engineering, Inc. ("Frymire"). As part of its contract with Price Woods, Frymire agreed to pay for any damages caused to Price Woods or the hotel owner "by reason of [Frymire's] performance of the work" and to obtain liability insurance to cover this indemnity obligation. Frymire complied with the agreement by purchasing a general liability policy from Liberty Mutual Insurance Co. ("Liberty Mutual").

While working on the hotel's air conditioning system, Frymire's employees installed an "Add–A–Valve" to a chilled water line. The water line later ruptured at the site of the valve, resulting in extensive water damage to the hotel. The hotel owner sought indemnification from Frymire according to the terms of the contract; Liberty Mutual paid the owner $458,496 on Frymire's behalf; and the parties signed an agreement releasing Frymire and Liberty Mutual from "all actions, claims, and demands" stemming from the incident.

Nearly two years after signing the release, Frymire, by and through Liberty Mutual (together, "Frymire"), sued the manufacturers of the "Add–A–Valve"—Jomar International, Ltd. and Mixer S.R.L. (together, "Jomar")—to recoup the indemnification payment, alleging damages from Jomar's negligence, product liability, and breach of warranty. Jomar filed both traditional and no-evidence motions for summary judgment, and the trial court granted both motions without explanation. The court of appeals affirmed, holding that Frymire lacked standing to assert its claims because it failed to establish a right to equitable subrogation.[2] Because the court based its holding solely on standing, it did not address whether summary judgment was appropriate under Jomar's other arguments.[3]

## II. Equitable Subrogation

The doctrine of equitable subrogation allows a party who would otherwise lack standing to step into the shoes of and pursue the claims belonging to a party with standing.[4] Texas courts interpret this doctrine liberally.[5] Although the doctrine most often arises in the insurance context,[6] equitable subrogation applies "in every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity should have been paid by the latter."[7] Thus, a party seeking equitable subrogation must show it involuntarily paid a debt primarily owed by another in a situation that favors equitable relief.[8]

The court of appeals held that Frymire failed to satisfy any of these requirements, determining that Frymire paid the hotel owner "to satisfy its own contractual obligation" and that the payment was volun-

---

2. 194 S.W.3d 713, 716.

3. *Id.*

4. *See Mid–Continent Ins. Co. v. Liberty Mut. Ins. Co.,* 236 S.W.3d 765, 774 (Tex.2007); *McBroome–Bennett Plumbing, Inc. v. Villa France, Inc.,* 515 S.W.2d 32, 36 (Tex.Civ.App.-Dallas 1974, writ ref'd n.r.e.). We recognize that "standing" is a broad term covering numerous jurisdictional doctrines. We use the term here as Texas courts have long used it in this context-to explain when we allow one party to stand in the shoes of another as a

plaintiff under our common law of equitable subrogation.

5. *See McBroome,* 515 S.W.2d at 36.

6. *See Argonaut Ins. Co. v. Allstate Ins. Co.,* 869 S.W.2d 537, 541 (Tex.App.-Corpus Christi 1993, writ denied).

7. *Mid–Continent,* 236 S.W.3d at 774.

8. *Id.; see also Smart v. Tower Land & Inv. Co.,* 597 S.W.2d 333, 337 (Tex.1980).

tary and did not unjustly enrich Jomar.[9] Frymire contends that the court of appeals misapplied the subrogation requirements. According to Frymire, the indemnity payment extinguished the tort debt primarily owed by Jomar; the indemnity payment was an involuntary payment made pursuant to a binding contractual obligation; and Jomar will be unjustly enriched if it escapes liability for its defective product because of Frymire's contractual payment. We address each of these issues in turn, considering the evidence in the light most favorable to Frymire, the nonmovant.[10]

### A. Third–Party Debt

■ "A right to subrogation is often asserted by one who pays a debt owed by another,"[11] but we have yet to directly address what constitutes "a debt owed by another." Frymire urges us to focus on the debt potentially owed in tort by Jomar to the hotel for the water damage caused by Jomar's faulty valve. Frymire contends that it satisfied Jomar's debt by paying for the damages incurred by the hotel and is thus entitled to recoup that payment through equitable subrogation. Jomar counters that the debt in question is the contractual debt owed by Frymire to the hotel. Having suffered extensive damage as a result of Frymire's work, the hotel turned to Frymire, not Jomar, for payment. Jomar claims that Frymire covered the damage according to the terms of a contract to which Jomar was not a party and of which Jomar did not have notice, thus satisfying a debt owed by Frymire. Furthermore, Jomar argues that Frymire should be prevented from asserting the rights of a party, the hotel, to which Frymire was directly indebted.

Jomar correctly argues that Frymire's contractual payment fulfilled a debt owed by Frymire to the hotel; however, the satisfaction of this contractual debt does not foreclose the existence and satisfaction of another debt owed by Jomar to the hotel. We have previously permitted subrogation-based claims to proceed under similar circumstances.[12]

In *Keck, Mahin & Cate v. National Union Fire Insurance Co. of Pittsburgh, PA,* an excess insurer, acting on behalf of its insured, settled a lawsuit against the insured according to the terms of the policy. The excess insurer then sued the primary insurer for negligence and the defending law firm for legal malpractice, asserting claims on behalf of the insured under the doctrine of equitable subrogation.[13] The underlying facts in *Keck* are strikingly similar to the facts highlighted by Jomar in this case. The insured relied on the excess insurer for payment and never sought to recover damages from the law firm or the primary insurer. Furthermore, the excess insurer's settlement payment fulfilled a contractual obligation owed to the insured and was made according to a policy to which the law firm and the primary insurer were not parties and of which they did not have prior notice. Nevertheless, we permitted the excess insurer's claims to proceed.[14]

9. 194 S.W.3d at 716.

10. *See King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 750 (Tex.2003) (no-evidence summary judgment); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex. 1985) (traditional summary judgment).

11. *Smart,* 597 S.W.2d at 337.

12. *See Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,* 20 S.W.3d 692, 695–96 (Tex.2000).

13. *Id.*

14. *Id.* at 696.

Jomar attempts to distinguish *Keck* on the basis of its context and the identity of the party receiving payment. Unlike *Keck*, this case does not arise in the context of excess liability insurance. Additionally, the excess insurer in *Keck* satisfied its contractual debt with the insured through payment to a third party whereas Frymire paid a contractual debt directly to the hotel owner. These differences do not persuade us to reach a different result here. Equitable subrogation applies in "*every* instance in which one person … has paid a debt for which another was primarily liable." [15] Jomar points us to *Smart v. Tower Land & Investment Co.*, where we refused to extend subrogation rights to a mortgage holder who had paid property taxes on behalf of the mortgage debtor, as an instance where subrogation was denied to a party seeking to assert the rights of the payee.[16] In *Smart*, we refused to allow the mortgage holder to assert the rights of the taxing authority against the mortgage debtor, not because the holder had paid the taxing authority directly, but because subrogation rights based in equity had been foreclosed by the terms of the mortgage contract.[17] We permitted the excess insurer's equitable subrogation claims to proceed in *Keck*, and, in spite of Jomar's arguments, we will permit Frymire's claims to proceed here if Frymire's indemnity payment satisfied a debt primarily owed by Jomar to the hotel owner.

■ In response to Jomar's summary judgment motion, Frymire presented a report on the water leak from its expert, Johnie Spruiell. Spruiell inspected the "Add–A–Valve" at issue and concluded in his report that Frymire's employees installed the valve according to Jomar's instructions; however, when installing an adjoining ball valve, the employees may have introduced torque into the copper tubing of the water line, causing the tubing inside the "Add–A–Valve" to fail. According to Spruiell, once the tubing failed, the Teflon tape sealing the valve to the water line quickly gave way, resulting in the water leakage. Spruiell determined that a properly designed valve would not have failed under these circumstances. Viewing this evidence in the light most favorable to Frymire and disregarding any contrary inferences, as we must at this stage of the proceedings,[18] we conclude that Frymire satisfied its summary judgment burden to provide evidence that a design defect in Jomar's "Add–AValve" primarily caused the rupture, and therefore, that Jomar is primarily responsible for the resulting damage.

### B. Involuntary Payment

■ Having determined that Frymire showed some evidence that it paid a debt

15. *Mid–Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 774 (Tex.2007) (emphasis added); *see also Galbraith–Foxworth Lumber Co. v. Long*, 5 S.W.2d 162, 167 (Tex.Civ. App.-Dallas 1928, writ ref'd); *Lancer Corp. v. Murillo*, 909 S.W.2d 122, 127 (Tex.App.-San Antonio 1995, no writ) (identifying Texas cases that granted equitable subrogation rights to sureties, guarantors, and creditors and concluding that a self-insured manufacturer was likewise entitled to equitable subrogation). *But see Excess Underwriters v. Frank's Casing Crew & Rental Tools, Inc.*, 246

S.W.3d 42, 47 (Tex.2008) (recognizing the longstanding rule that insurers may not apply equitable subrogation against their insureds).

16. *Smart*, 597 S.W.2d at 338–39.

17. *Id.* at 338.

18. *See King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex.2003) (no-evidence summary judgment); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985) (traditional summary judgment).

primarily owed by Jomar, we turn to the next, and most frequently disputed, element of equitable subrogation—an involuntary payment.[19] A payment is voluntary when the payor acts "without any assignment or agreement for subrogation, without being under any legal obligation to make payment, and without being compelled to do so for the preservation of any rights or property."[20] Texas courts are "liberal in their determinations that payments were made involuntarily."[21]

■ Frymire claims that it was legally obligated by its contract with Price Woods to pay the hotel for the water damage; therefore, the indemnity payment made to the hotel owner was involuntary. Jomar responds that equitable subrogation is only available "when one person confers upon another a benefit that is not required by legal duty or contract."[22] According to Jomar, Frymire voluntarily entered the contract and voluntarily satisfied the hotel owner's demands for payment, so it is not entitled to equitable subrogation.

We do not read *Smart* as foreclosing equitable subrogation to any party who pays a debt pursuant to the requirements of a contract. Our equitable subrogation holdings as far back as *Oury* describe involuntary payments as "legal obligation[s]"[23] and payments that are made "for the protection of some interest of the party making the payment"[24]; these descriptions easily encompass a contractual obligation. Instead, we read *Smart* as preventing a person who confers a benefit on a party as "required by legal duty or contract" from leveraging equitable subrogation to assert claims against that same party.[25] That is, Frymire would lack standing to seek equitable subrogation if Frymire had contracted with Jomar, rather than with Price Woods, to pay the hotel's damages caused by Jomar. This common-sense reading reflects the equitable nature of equitable subrogation and harmonizes *Smart* with our other equitable subrogation holdings.[26]

Jomar's argument that Frymire cannot assert equitable subrogation because its indemnity payment was under a voluntary contract would, if accepted and applied to other contracts, be a radical departure from long-settled Texas subrogation law. For instance, insurance policies are contracts, too, and if the hotel's property insurer had paid the hotel for the cost of repairs pursuant to a policy agreement, it would certainly be able to assert an equitable subrogation claim against Jomar.[27]

**19.** *See Argonaut Ins. Co. v. Allstate Ins. Co.,* 869 S.W.2d 537, 542 (Tex.App.-Corpus Christi 1993, writ denied).

**20.** *First Nat'l Bank of Kerrville v. O'Dell,* 856 S.W.2d 410, 415 (Tex.1993) (quoting *Oury v. Saunders,* 77 Tex. 278, 13 S.W. 1030, 1031 (1890)).

**21.** *Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,* 20 S.W.3d 692, 702 (Tex.2000) (quoting *Argonaut,* 869 S.W.2d at 542).

**22.** *Smart,* 597 S.W.2d at 337.

**23.** *Oury,* 13 S.W. at 1031.

**24.** *Galbraith–Foxworth Lumber Co. v. Long,* 5 S.W.2d 162, 167 (Tex.Civ.App.-Dallas 1928, writ ref'd).

**25.** *Smart,* 597 S.W.2d at 337.

**26.** *See Keck,* 20 S.W.3d at 702 (holding that payment made in reasonable belief that it was required by an insurance contract was involuntary); *Galbraith,* 5 S.W.2d at 167 (defining an involuntary payment as one made to protect the payor's interest); *Oury,* 13 S.W. at 1031 (defining a voluntary payment as one made without "legal obligation").

**27.** *See Medina v. Herrera,* 927 S.W.2d 597, 604 (Tex.1996).

The situation here is not much different. Frymire agreed to "indemnify and hold Price Woods, Inc. and Owner harmless from any and all liability ... which may be incurred ... by reason of [Frymire's] performance of the work." When the water line ruptured, the hotel owner made a claim on Frymire for indemnification under the contract. In this case, no legal duty obligated Frymire to confer a benefit on Jomar—Frymire paid the hotel owner to satisfy contractual indemnity obligations owed to Price Woods. Frymire's decision to contract with Price Woods was voluntary; its duty to honor that contract was not. Having acted to satisfy a legal obligation and to protect its interests under the contract (and its reputation in the marketplace), Frymire involuntarily extinguished a debt primarily owed by Jomar to the hotel owner.

### C. Unjust Enrichment

Even though Frymire has shown evidence that its indemnity payment satisfies the first two elements of equitable subrogation, it must still show that the circumstances of the case favor equitable relief. Frymire says Jomar will be unjustly enriched if it is allowed to escape responsibility for the damage caused by its faulty product. Jomar claims that Frymire did not confer any benefit on Jomar; rather, Frymire acted on its own account to satisfy contractual and potential tort liability for the actions of its own workers. According to Jomar, the hotel owner could have pursued tort claims against Jomar but chose not to; therefore, any hypothetical tort claims against Jomar should not be relied upon for determining unjust enrichment. Once again, we turn to Keck for

guidance. In that case, we permitted the excess insurer to pursue tort claims against the primary insurer and the law firm through equitable subrogation, even though the insured itself chose not to pursue those claims.[28] Likewise, Frymire seeks to pursue claims against Jomar in the face of the hotel owner's inaction. Given the similarities between Keck and this case, and the evidentiary presumption that Jomar's faulty product primarily caused the water damage, we have no trouble concluding that Jomar would be unjustly enriched were Frymire not permitted to pursue its claims.

### III. Contribution and Assignment

Frymire has shown sufficient evidence to survive summary judgment on the issue of standing under the equitable subrogation doctrine. However, Jomar argues that Frymire is using equitable subrogation as a cloak to seek contribution from Jomar or an assignment of the hotel owner's claims against Jomar under circumstances in which Texas law prohibits contribution and assignment. Specifically, Jomar alleges that Frymire's own negligence caused the damages related to the water line rupture and that, as a tortfeasor, Frymire is barred from pursuing contribution from Jomar or an assignment of the hotel's claims against Jomar.[29] These arguments attack the viability of the claims Frymire seeks to pursue under the doctrine of equitable subrogation, but even if Jomar's arguments have merit, an issue on which we express no opinion, that does not mean that Frymire cannot even bring suit. Equitable subrogation confers standing on a party, opening the court-

---

**28.** Keck, 20 S.W.3d at 695–96.

**29.** See Int'l Proteins Corp. v. Ralston–Purina Co., 744 S.W.2d 932, 934 (Tex.1988) (assignment of claims to joint tortfeasor prohibited);

Beech Aircraft Corp. v. Jinkins, 739 S.W.2d 19, 22 (Tex.1987) (contribution claim by settling tortfeasor against non-settling parties prohibited).

house door and allowing the subrogated party to pursue otherwise unavailable claims.[30] The validity of those claims, and any defenses asserted against them, are assessed once a party has demonstrated the right to bring suit. The court of appeals focused solely on whether Frymire had standing to pursue its claims; holding Frymire lacked standing, the court did not address the merits of Frymire's underlying claims—and neither do we.[31]

## IV. Conclusion

We hold that Frymire has standing to pursue its claims against Jomar under the doctrine of equitable subrogation because the evidence supports Frymire's contentions that it (1) paid a debt primarily owed by Jomar, (2) did so involuntarily, and (3) seeks subrogation in a situation where Jomar would be unjustly enriched if Frymire were precluded from pursuing its claims. Having concluded that Frymire has standing to pursue its claims under the doctrine of equitable subrogation, we reverse the court of appeals' judgment and remand to that court for further proceedings.

---

30. *See Mid–Continent Ins. Co. v. Liberty Mut. Ins. Co.,* 236 S.W.3d 765, 774 (Tex.2007).

31. *See Kallam v. Boyd,* 232 S.W.3d 774, 776 (Tex.2007) ("We believe prudence dictates awaiting a case in which this important issue has been fully litigated below 'so that we will have the benefit of developed arguments on both sides and lower court opinions squarely addressing the question.'" (quoting *Yee v. City of Escondido,* 503 U.S. 519, 538, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992))).