**Opinion issued June 28, 2012**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-11-01065-CV

———————————

**ALLSTATE INSURANCE COMPANY, Appellant**

**V.**

**ANNE ("AMY") AND MICHAEL SPELLINGS, MASON'S MILL AND LUMBER CO., INC., JESSE LEON, MACKENZIE PATRICK DAVIS, MASON SPELLINGS, ROBERT GRANT CLAY, AND ESCALANTE'S MEXICAN GRILLE, Appellees**

---

On Appeal from the 281st District Court
Harris County, Texas
Trial Court Case No. 2010-51824-A

---

## O P I N I O N

Appellant, Allstate Insurance Company, challenges the trial court's rendition

of summary judgment in favor of appellees, Anne ("Amy") and Michael Spellings,

Mason's Mill and Lumber Co., Inc., Jesse Leon, Mackenzie Patrick Davis, Mason Spellings, Robert Grant Clay, and Escalante's Mexican Grille, in Allstate's suit against appellees for equitable subrogation. In its sole issue, Allstate contends that the trial court erred in granting summary judgment in favor of appellees on its equitable-subrogation claim.

We affirm.

## Background

On June 30, 2009, Amber Jeffrey, who was seventeen years of age, lost control of the car that she was driving, struck another car, occupied by Helen and Jim Haywood, and died as a result of injuries she sustained in the collision. An autopsy performed on Amber's body revealed that she was legally intoxicated at the time of the collision.

Allstate, the liability insurer for Amber and her father, Scott Jeffrey, paid the Haywoods $1,350,973 in damages for the severe injuries they sustained in the collision. The Haywoods then signed releases in favor of Allstate and the Jeffreys.[1]

---

[1] Specifically, the Haywoods expressly released Allstate, the Jeffreys, and "all other persons, firms or corporations liable or, who might be claimed to be liable" from claims "which have resulted or may in the future develop from" the collision. We do not address the enforceability of the releases as to appellees.

On August 19, 2010, Scott Jeffrey filed a wrongful-death suit against appellees and others related to the death of Amber.[2] In his petition, Scott alleged that on the night of the collision, Michael and Amy Spellings, who were the parents of Amber's best friend Sara Spellings, had allowed Amber to be provided with alcoholic beverages at a warehouse of a company owned by the Spellings. Scott also alleged that Amy Spellings had "introduced Amber to alcohol" and the Spellings had "cultivated a safe haven" for minors "to consume and abuse alcohol." Scott brought suit against appellees for, among other things, violations of the Texas Alcohol Beverage Code,[3] wrongful death, negligence, negligence per se, and attractive nuisance. He sought recovery of actual damages, pain and suffering damages, medical expenses, mental anguish damages, and exemplary damages.

Allstate filed a plea in intervention in Scott's wrongful-death suit, alleging that it had provided automobile and liability insurance coverage to the Jeffreys, which was in effect on the date of the collision. It argued that it had a justiciable interest in the litigation because it had "made medical, bodily injury, property damage and collision payments to or for the benefit of Jim and Helen Haywood

---

[2]    Scott filed his suit after Allstate had settled Helen Haywood's claim but before Allstate settled Jim Haywood's claim. However, the timing of the Haywoods' settlements is not material to our analysis of whether Allstate is entitled to pursue equitable subrogation in the instant proceedings.

[3]    *See* TEX. ALCOHOL BEV. CODE ANN. § 2.02(b), (c) (Vernon Supp. 2011).

and Scott Jeffrey and/or the Estate of Amber Jeffrey." In its petition, Allstate sought to "adopt and incorporate" Scott's allegations against appellees for "negligence and liability," and it asserted a claim for equitable subrogation. Allstate contended that it is entitled to "recover the amounts paid to the Haywoods in auto liability coverage, umbrella coverage, and property damage coverage." Specifically, Allstate asserted that "it was caused to make payments on the insurance coverage afforded to Scott Jeffrey and/or Amber Jeffrey" and, as a result, it incurred as its damages liability payments in the amount of $500,000 and umbrella liability payments in the amount of $850,973.[4]

Appellees filed answers to Allstate's plea, contending that Allstate had no contribution or subrogation rights in Scott's wrongful-death suit. Appellees then filed summary-judgment motions, arguing that Allstate is precluded from seeking reimbursement for payments it had made to the Haywoods "under any legal theory or type of subrogation" because "Allstate stands in the shoes of its insured(s) for subrogation purposes" and a "settling tortfeasor" like Allstate "has no right to contribution." Appellees noted that the Haywoods had made claims only against the Jeffreys and Allstate for the severe injuries that they sustained in the collision, Allstate had conducted an "extensive investigation" of the collision, and Allstate

---

[4]     Allstate also alleged that it had incurred damages as a result of making property-damage payments, but a claim for those amounts was not disposed of by the challenged summary judgment and it is not at issue in this appeal.

4

had concluded that Amber was the "sole cause" of the collision. Appellees attached to their summary-judgment motions Allstate claim documents and the releases that the Haywoods had executed.

In its summary-judgment response, Allstate contended that it was entitled to "step into the shoes" of the Haywoods to "pursue reimbursement for the monies paid out for medical, bodily injury, property damage and collision claims." Allstate argued that it "takes on the claims and defenses of the Haywoods because it paid for the Haywoods' damages" and it should be allowed to proceed on its claims against appellees because they were "primarily responsible for the accident."[5] Allstate attached to its summary-judgment response evidence that the Spellings had provided alcohol to minors, including Amber, and the Spellings and appellees had engaged in other negligent conduct.

The trial court granted appellees summary judgment on Allstate's claims "seeking a recovery based upon payments made to the Haywoods." The trial court

---

[5] Alternatively, Allstate contended that it was entitled to "step into the shoes" of Scott or Amber's Estate. As explained below, on appeal, Allstate contends only that it is entitled to pursue equitable subrogation by standing "in the injured parties' shoes," i.e., the Haywoods.

then severed Allstate's equitable-subrogation claim in which it sought recovery of payments made to the Haywoods.[6]

## Standard of Review

To prevail on a summary-judgment motion, a movant has the burden of proving that he is entitled to judgment as a matter of law and there is no genuine issue of material fact. TEX. R. CIV. P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). When a defendant moves for summary judgment, he must either (1) disprove at least one essential element of the plaintiff's cause of action or (2) plead and conclusively establish each essential element of his affirmative defense, thereby defeating the plaintiff's cause of action. *Cathey*, 900 S.W.2d at 341; *Yazdchi v. Bank One, Tex., N.A.*, 177 S.W.3d 399, 404 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). When deciding whether there is a disputed, material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). Every reasonable inference must be indulged in favor of the non-movant and any doubts must be resolved in his favor. *Id.* at 549.

---

[6] Scott's wrongful-death suit against appellees and Allstate's petition in intervention seeking recovery of property damage payments made to Scott remained pending in the trial court following the severance.

6

## Equitable Subrogation

In its sole issue, Allstate argues that the trial court erred in granting summary judgment in favor of appellees on its equitable-subrogation claim because summary-judgment evidence demonstrated that it involuntarily paid a third party debt in circumstances that favor equitable relief. Allstate emphasizes that its equitable-subrogation claim "is not based on its standing" in the shoes of its insureds, i.e., the Jeffreys, but rather "is based on its standing in the Haywoods' shoes."

First, we note that Allstate is not arguing in this appeal that the trial court erred in granting summary judgment because it is entitled to recover, through contractual or equitable subrogation, amounts that it paid directly to the Jeffreys. Those claims are not before us. Second, we note that Allstate is not asserting that, as a settling tortfeasor, it is entitled to stand in the shoes of the Jeffreys and recover damages from appellees for amounts that it "overpaid" in settling the Haywoods' claims. Allstate does not dispute that Texas law prohibits a settling tortfeasor that paid more than its proportionate share of liability from seeking contribution from other tortfeasors. *See Beech Aircraft Corp. v. Jinkins*, 739 S.W.2d 19, 22 (Tex. 1987) (stating that "defendant can settle only his proportionate share of a common liability and cannot preserve contribution rights under either the common law or the comparative negligence statute by attempting to settle the plaintiff's entire

claim"). Third, Allstate does not contend that it obtained an assignment of the Haywoods' potential causes of action against appellees, which, we note, would also be foreclosed under Texas law. *See Int'l Proteins Corp. v. Ralston-Purina Co.*, 744 S.W.2d 932, 934 (Tex. 1988) (stating that "it is contrary to public policy to permit a joint tortfeasor the right to purchase a cause of action from a plaintiff to whose injury the tortfeasor contributed" and that joint tortfeasor "could settle only its proportionate share of liability and could not preserve a right to contribution by taking an assignment of" injured party's cause of action). Instead, Allstate contends only that, by standing in the shoes of the Haywoods, it is allowed to "equitably subrogate against other responsible parties" in Scott's wrongful-death suit.

Equitable subrogation "allows a party who would otherwise lack standing to step into the shoes of and pursue the claims belonging to a party with standing." *Frymire Eng'g Co., Inc. ex rel. Liberty Mut. Ins. Co. v. Jomar Int'l, Ltd.*, 259 S.W.3d 140, 142 (Tex. 2008). Texas courts interpret the doctrine of equitable subrogation "liberally," and the doctrine applies "in every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity should have been paid by the latter." *Id*. In sum, "a party seeking equitable subrogation must show it involuntarily paid a debt primarily owed by another in a situation that favors equitable relief." *Id*.; *see also*

8

*Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 774 (Tex. 2007) (stating that "equitable (or legal) subrogation does not depend on contract but arises in every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity should have been paid by the latter"). When equitable subrogation applies, "the insurer stands in the shoes of the insured, obtaining only those rights held by the insured against a third party, subject to any defenses held by the third party against the insured." *Id.*; *see also Bennett Truck Transp., LLC v. Williams Bros. Const.*, 256 S.W.3d 730, 733 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ("When an insurer pays a loss, the insurer becomes equitably subrogated to its insured's rights and stands in the insured's shoes against the tortfeasor who caused the loss.").

Allstate asserts that its equitable-subrogation claim has been "expressly approved" by the Texas Supreme Court in *Frymire*, in which a hotel owner hired a general contractor for a remodeling job, and the general contractor subcontracted the heating, ventilation, air conditioning, and sheet metal work to Frymire. 259 S.W.3d at 141–42. The subcontract between Frymire and the general contractor required Frymire to pay for any damages caused to the general contractor or hotel owner by Frymire's work and to obtain liability insurance to cover this indemnity obligation. *Id*. at 142. Frymire, in compliance with its contractual obligation, purchased a general liability policy from Liberty Mutual. *Id*.

While Frymire was installing a valve on a water line, the water line ruptured at the point where the valve was being installed, causing extensive water damage to the hotel. *Id.* The hotel owner sought indemnification from Frymire according to the terms of the subcontract, Liberty Mutual paid the hotel owner on Frymire's behalf, and the parties signed an agreement releasing Frymire and Liberty Mutual from all claims stemming from the incident. *Id.* Subsequently, Frymire, "by and through Liberty Mutual," sued the manufacturers of the valve to recoup the indemnification payment. *Id.* The trial court granted summary judgment in favor of the manufacturer, and the court of appeals affirmed, holding that Frymire lacked standing to assert its claims because it had failed to establish a right to equitable subrogation. *Id.*

In reviewing the propriety of the trial court's summary judgment, the supreme court first considered whether Frymire's indemnity payment had extinguished a tort debt primarily owed by another. *Id.* at 142–43. The court concluded that Frymire had presented summary-judgment evidence demonstrating that a design defect in the manufacturer's valve "primarily caused the rupture," and, thus, the manufacturer was "primarily responsible" for the water damage. *Id.* at 144. Next, the supreme court considered whether the indemnity payment made by Frymire had been "involuntary." *Id.* at 144–45. The supreme court stated that a "payment is voluntary when the payor acts without any assignment or agreement

for subrogation, without being under any legal obligation to make payment, and without being compelled to do so for the preservation of any rights or property." *Id*. at 145 (citation omitted). Noting that Frymire had paid the hotel owner "to satisfy contractual indemnity obligations" that it owed to the general contractor, the supreme court concluded that Frymire had "acted to satisfy a legal obligation and to protect its interests under the contract" and, thus, it had "involuntarily extinguished a debt primarily owed by [the manufacturer] to the hotel owner." *Id*. at 146. Finally, the supreme court considered whether the circumstances favored equitable relief. *Id*. Noting that the hotel owner had elected not to pursue tort claims against the manufacturer, the court concluded that, in light of the evidentiary presumption that the manufacturer's faulty product "primarily" caused the water damage, the manufacturer would be unjustly enriched if Frymire was not permitted to pursue its claims. *Id*.

In comparing the instant case to *Frymire*, Allstate asserts that the "summary-judgment evidence shows" that the Spellings and other appellees "provided alcohol to minors" and engaged in "drag racing" and "other negligent conduct." Allstate asserts that the evidence raises a fact issue on whether the debt it paid was "primarily owed by another," and it characterizes "the basis" of Scott's underlying wrongful-death suit as determining "who is primarily liable for this accident." Allstate further asserts that it involuntarily paid the Haywoods based upon a

11

"contractual/legal obligation for the protection" of the Jeffreys. Finally, Allstate argues that because its settlement payment "adequately compensated" the Haywoods, who did not file suit against appellees, appellees would be unjustly enriched if Allstate is not permitted to pursue its equitable-subrogation claim against them.[7]

The *Frymire* case is substantively distinguishable, and Allstate's attempt to bring an equitable-subrogation claim on the instant facts stretches any such claim beyond the boundaries previously recognized by Texas courts. As noted above, the supreme court has explained that an insurer bringing an equitable-subrogation claim "stands in the shoes" of its insured and obtains "only those rights held by the insured against a third party, subject to any defenses held by the third party against the insured." *Mid-Continent Ins. Co.*, 236 S.W.3d at 774. Allstate concedes that it is not attempting to stand in the shoes of its insureds to recover from appellees amounts that it paid to its insureds. Rather, Allstate is seeking to stand in the shoes of the Haywoods and recover from appellees amounts that it paid to the Haywoods as the liability insurer of the Jeffreys.

---

[7]    Allstate's arguments assume that its settlement payments, made expressly on behalf of it and the Jeffreys, made the Haywoods whole. Although it appears undisputed that the Haywoods did not file suit against appellees, this fact does not demonstrate that the Haywoods were made whole or were "adequately compensated."

The Texas Supreme Court's opinion in *Frymire* does not support Allstate's efforts to bring an equitable-subrogation claim against appellees in these circumstances. The supreme court in *Frymire* expressly noted that Liberty Mutual, the insurer, was bringing suit "through" Frymire, its insured, who had purchased the Liberty Mutual policy to fulfill an express contractual indemnity obligation.[8] 259 S.W.3d at 142. Frymire owed both the general contractor and the hotel owner an indemnity obligation for the water damage, and there was no dispute that Liberty Mutual's policy applied to the damage. *Id.* The supreme court expressly noted that Frymire's "situation" was not "much different" than that of a typical "property insurer" and stated, "[I]nsurance policies are contracts, too, and if the hotel's property insurer had paid the hotel for the cost of repairs pursuant to a policy agreement, it would certainly be able to assert an equitable subrogation claim against [the valve manufacturer]." *Id.* at 145; *see also Bennett Truck Transp., LLC*, 256 S.W.3d at 733 (allowing "common carrier" that had paid property owner for damage sustained during transport to pursue equitable-

---

[8] Allstate notes that, on remand, the Dallas Court of Appeals stated that Frymire stood "in the shoes of the injured party." *Frymire Eng'g Co., Inc. v. Jomar*, No. 05-04-01717-CV, 2008 WL 4838414, at *1 (Tex. App.—Dallas Nov. 10, 2008, no pet.). However, the supreme court in *Frymire* emphasized that the indemnity obligation owed by Frymire to the hotel owner was not "much different" than that of a typical "property insurer." *Frymire Eng'g Co., Inc. ex rel. Liberty Mut. Ins. Co. v. Jomar*, 259 S.W.3d 140, 145 (Tex. 2008). Thus, we conclude that the Dallas Court of Appeals' statement, made upon remand, does not provide a basis on which Allstate is entitled to stand in the shoes of the Haywoods and pursue recovery of its insurance payments by intervening in Scott's wrongful-death suit against appellees.

subrogation claim against negligent third party after noting that "common carriers are generally liable as insurers for any loss or injury to the property occurring during transport"). Thus, Frymire had a legal duty to satisfy its contractual indemnity obligation by paying the hotel owner for the water damage, and, in doing so, it involuntarily extinguished a debt primarily owned by another. 259 S.W.3d at 145; *see also Bennett Truck Transp., LLC*, 256 S.W.3d at 734 (concluding that common carrier that had paid owner for property damage had not "voluntarily pa[id] the owner's entire damages" but instead had been "required to do so because of its status as a common carrier" and insurer of property).

Here, attempting to fit its claim into the *Frymire* framework, Allstate asserts that the Jeffreys had "voluntarily contracted for insurance with Allstate to cover *any damages* caused in an automobile accident, as well as a policy for excess coverage." (Emphasis added). But Allstate does not dispute that the terms of its liability policy provided for liability payments to the Haywoods based only upon the fault of its insured.[9] To the extent that Allstate made any payments exceeding the amounts owed in proportion to the fault of its insured, such payments would have been voluntary. Thus, we conclude that Allstate is not entitled to recoup the payments it made to the Haywoods by intervening in Scott's wrongful-death suit

---

[9] This is not to say that, in making the settlement payments, Allstate or the Jeffreys admitted fault.

14

and bringing an equitable-subrogation claim against appellees.[10] Accordingly, we hold that the trial court did not err in granting appellees summary judgment.

We overrule Allstate's sole issue.

## Conclusion

We affirm the judgment of the trial court.

Terry Jennings
Justice

Panel consists of Chief Justice Radack and Justices Jennings and Keyes.

---

[10] In regard to the voluntariness element of an equitable-subrogation claim, the Texas Supreme Court has explained that an "insurer who pays a third-party claim against its insured is not a volunteer if the payment is made in good faith and under a reasonable belief that the payment is necessary to its protection." *Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 20 S.W.3d 692, 702 (Tex. 2000). In *Keck*, the supreme court was addressing claims brought by an excess liability insurer alleging that it had been "forced to settle a third party claim for too much because the attorneys and primary carrier had mishandled the defense." *Id.* at 695. In support of its holding, the supreme court cited a case from the United States Court of Appeals for the Fifth Circuit and a case from the Corpus Christi Court of Appeals involving similar fact patterns, i.e., claims brought by an excess insurer against either its insured or a primary insurer seeking reimbursement of amounts owed under a primary policy. *Id.* (citing *Arkwright–Boston Mfrs. Mut. Ins. Co. v. Aries Marine Corp.*, 932 F.2d 442, 447 (5th Cir. 1991) and *Argonaut Ins. Co. v. Allstate Ins. Co.*, 869 S.W.2d 537, 542 (Tex. App.—Corpus Christi 1993, writ denied)). The circumstances surrounding the subrogation claims in those cases were materially different than those present in the instant case. Allstate has not cited any cases that would support an insurer bringing an equitable-subrogation claim on facts similar to those presented here.

15