

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-14-00194-CV

JERRY HUDGEONS,
INDIVIDUALLY AND IN HIS
CAPACITY AS STOCKHOLDERS'
REPRESENTATIVE FOR THE
FORMER STOCKHOLDERS OF
TOTAL ELECTRICAL SERVICE &
SUPPLY CO.

APPELLANT

V.

DARRELL HALLMARK

APPELLEE

----------

FROM THE 236TH DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 236-261088-12

----------

## MEMORANDUM OPINION[1]

----------

---

[1]*See* Tex. R. App. P. 47.4.

## I. INTRODUCTION

The primary issues we address in this summary judgment appeal are (1) whether Appellant Jerry Hudgeons, Individually and in his capacity as stockholders' representative for the former stockholders of Total Electrical Service & Supply Co. (TESSCO), possesses standing to pursue the counterclaims he asserted against Appellee Darrell Hallmark, and (2) whether the trial court erroneously granted declaratory-judgment relief concerning parties not before it. Because we answer both issues in the negative, we will affirm the trial court's summary judgment.

## II. FACTUAL OVERVIEW

On December 31, 2009, TESSCO merged into Power Line Services, Inc. (PLSI). There were four parties to the merger agreement: TESSCO, PLSI, Total Electric Acquisition Corp.—a PLSI subsidiary, and Hudgeons as the "Stockholders' Representative." The merger agreement defined the term "Stockholders' Representative" as meaning "Jerry L. Hudgeons, as the representative of the Stockholders."

Before the merger, TESSCO had adopted and administered two written incentive compensation plans; certain officers were eligible for bonus payments under the plans. Hallmark was a senior vice-president of TESSCO when the merger occurred and was eligible for bonus payments under the incentive compensation plans. Before the closing date for TESSCO's merger into PLSI,

TESSCO made bonus payments under the terms of the incentive compensation plans to Hallmark and other officers.

Hudgeons alleges that the bonus payments were miscalculated and that, consequently, Hallmark and other officers were overpaid. Hudgeons asserts that this overpayment resulted in a shortfall in TESSCO's "Net Working Capital Target" as that term was defined in the merger agreement. Hudgeons asserts that purchase-monies funded by PLSI that would have been paid to TESSCO's stockholders under the merger agreement but for the "Net Working Capital Target" shortage were instead utilized, per the terms of the merger agreement, to raise the "Net Working Capital Target" to the pre-closing dollar figure required by the agreement. Hallmark sued for declaratory judgment and Hudgeons counterclaimed for unjust enrichment and monies had and received, seeking to recoup the monies Hudgeons alleges Hallmark was overpaid under TESSCO's incentive compensation plans: $133,480 under one of the incentive plans and $53,400 under the other.

## III. PROCEDURAL OVERVIEW

The trial court granted Hallmark's motion for summary judgment on Hudgeons's claim for unjust enrichment. Prior to that summary judgment hearing, Hudgeons had amended his pleadings to also assert a cause of action for money had and received. Hallmark then filed a second summary judgment motion seeking summary judgment on all remaining claims; the motion asserted Hallmark's entitlement to summary judgment on Hudgeons's claim for money had

3

and received and to summary judgment on Hallmark's own claim for declaratory judgment. The trial court granted summary judgment to Hallmark on the grounds that "[n]either Hudgeons nor the Former Stockholders whom he purports to represent have standing to assert the claims or make the demands relating to [the] 2009 Incentive Plan Payments made by TESSCO to Hallmark." The trial court also granted Hallmark summary judgment on his own claim for declaratory judgment, and awarded him attorney's fees. Hudgeons perfected this appeal.

## IV. STANDING

In his issue A, Hudgeons argues that he possesses standing to assert claims against Hallmark for TESSCO's alleged overpayment of bonuses owed Hallmark under TESSCO's incentive compensation plans because the "overpayment directly results in the shareholders fulfilling a contractual obligation [in the merger agreement] to make the seller and buyer whole at the expense of the shareholders by reducing their merger consideration." Hudgeons asserts that he has standing individually for the injury done directly to him by Hallmark and also asserts that he possesses standing based on equitable subrogation.[2]

Hallmark argues that Hudgeons lacks standing to seek recovery of overpayments, if any, that TESSCO made to Hallmark; Hallmark asserts that any

---

[2]Hudgeons does not purport to assert a stockholders derivative suit, claim standing to do so, or allege compliance with derivative requirements. *See* Tex. Bus. Orgs. Code Ann. §§ 21.551–.563 (West 2012).

4

claim for any overpayment made by TESSCO pursuant to the terms of TESSCO's incentive compensation plans belongs to and must be brought by TESSCO.

Standing is a component of subject-matter jurisdiction, and a plaintiff must have standing to maintain a suit. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445–46 (Tex. 1993). When a defendant challenges a plaintiff's standing in a traditional motion for summary judgment, we apply the standard of review governing traditional motions for summary judgment. *Kilpatrick v. Kilpatrick*, 205 S.W.3d 690, 700 (Tex. App.—Fort Worth 2006, pet. denied).

The general rule is that a corporate stockholder cannot recover damages personally for a wrong done solely to the corporation, even though he may be injured by that wrong. *Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex. 1990); *Swank v. Cunningham*, 258 S.W.3d 647, 661 (Tex. App.—Eastland 2008, pet. denied). The Texas Supreme Court has explained,

> Ordinarily, the cause of action for injury to the property of a corporation, or the impairment or destruction of its business, is vested in the corporation, as distinguished from its stockholders, even though it may result indirectly in loss of earnings to the stockholders. Generally, the individual stockholders have no separate and independent right of action for injuries suffered by the corporation which merely result in the depreciation of the value of their stock. This rule is based on the principle that where such an injury occurs each shareholder suffers relatively in proportion to the number of shares he owns, and each will be made whole if the corporation obtains restitution or compensation from the wrongdoer. Such action must be brought by the corporation, not alone to avoid a multiplicity of suits by the various stockholders and to bar a subsequent suit by the corporation, but in order that the damages so recovered may be available for the payment of the corporation's

5

creditors, and for proportional distributions to the stockholders as dividends, or for such other purposes as the directors may lawfully determine.

*Wingate*, 795 S.W.2d at 719 (quoting *Mass. v. Davis*, 140 Tex. 398, 407, 168 S.W.2d 216, 221 (1942), *cert. denied*, 320 U.S. 210, 63 S. Ct. 1447 (1943)).

Hudgeons argues that this general rule does not apply because he is entitled to assert a cause of action in his individual capacity "for direct injury done to him when the wrongdoer violates a duty arising from a contract, or otherwise, that is owed directly by the wrongdoer to the shareholder." *See Faour v. Faour*, 789 S.W.2d 620, 622 (Tex. App.—Texarkana 1990, writ denied). But Hudgeons does not identify any duty owed directly to him contractually or otherwise by the purported wrongdoer he has sued, Hallmark.[3] Thus, we hold that Hudgeons lacks standing in his individual capacity to assert claims against Hallmark for unjust enrichment and money had and received based on alleged overpayments to Hallmark made by TESSCO pursuant to two written employee incentive compensation plans.

Hudgeons next asserts that he possesses standing to assert unjust enrichment and money had and received claims against Hallmark based on the doctrine of equitable subrogation. Equitable subrogation is a legal fiction

---

[3]In his capacity as stockholders' representative, Hudgeons was a named party to the merger agreement and claims that "the contractual nature of the relationship between TESSCO and Hudgeons under the merger places a legal obligation on Hudgeons which is more than that of a mere shareholder." We agree with this statement, but it does not evidence any contractual merger-agreement duty owed to Hudgeons by either TESSCO or Hallmark.

6

whereby an obligation extinguished by a payment made by a third person is treated as still subsisting for the benefit of this third person, so that by means of it one creditor is substituted to the rights, remedies, and securities of another. *Bank of Am. v. Babu*, 340 S.W.3d 917, 925 (Tex. App.—Dallas 2011, pet. denied) (citing *First Nat'l Bank of Houston v. Ackerman,* 70 Tex. 315, 320, 8 S.W. 45, 47 (1888)). The doctrine prevents unjust enrichment when one person confers upon another a benefit by involuntarily paying a debt primarily owed by another in a situation that favors equitable relief. *Frymire Eng'g Co., ex rel. Liberty Mut. Ins. Co. v. Jomar Int'l., Ltd.*, 259 S.W.3d 140, 142 (Tex. 2008); *Smart v. Tower Land & Inv. Co.,* 597 S.W.2d 333, 337 (Tex. 1980).

Here, the terms of the merger agreement required that TESSCO's "Net Working Capital Target" meet or exceed a particular dollar figure; the merger agreement provided that it if did not, some pre-closing purchase monies tendered into escrow by PLSI would be utilized to raise the "Net Working Capital Target" to the required figure. Thus, the stockholders did not pay any monies, nor did they extinguish an obligation of TESSCO or an obligation of Hallmark. Instead, the contractual terms of the merger agreement (agreed to by the stockholders through their representative, Hudgeons, who signed the merger agreement in his capacity as stockholders' representative) dictated the application of the pre-closing purchase monies tendered by PLSI to raise TESSCO's "Net Working Capital Target" to meet the figure required by the merger agreement. Although, ultimately, implementation of the terms of the merger agreement did result in a

7

lower payment to TESSCO's stockholders following the merger, we cannot agree that the implementation of the contractual provisions of the merger agreement—the use of PSLI's pre-merger purchase monies to raise TESSCO's "Net Working Capital Target" to the required figure, a provision agreed to by the stockholders through Hudgeons as the stockholders' representative—qualifies as a "payment" by the stockholders that gives rise to equitable subrogation. *See, e.g., Blume v. Wells Fargo Bank, N.A.*, No. 05-13-01429-CV, 2014 WL 5768981, *3 (Tex. App.— Dallas Nov. 6, 2014, no pet.) (mem. op.) (upholding summary judgment on claims for unjust enrichment, money had and received, and equitable subrogation). And to the extent the use of PSLI's pre-merger purchase monies to raise TESSCO's "Net Working Capital Target" could be construed as a "payment," it was a payment required by a contract (the merger agreement), and therefore not recoverable under the doctrine of equitable subrogation. *See Smart*, 597 S.W.2d at 337 (explaining equitable subrogation is available only when a person confers a benefit on another that is not required by contract); *see also Frymire Eng'g Co.*, 259 S.W.3d at 145 (explaining that "we read *Smart* as preventing a person who confers a benefit on a party as 'required by legal duty or contract' from leveraging equitable subrogation to assert claims against that same party").

We overrule Hudgeons's issue A.[4]

---

[4]Having determined that Hudgeons lacked standing to assert unjust enrichment and money had and received claims against Hallmark—the only claims he asserted—we need not address his issues C, D, or E, challenging the

8

## V. Relief Not Granted Concerning Parties Not Before the Court

In his issue B, Hudgeons asserts that the trial court erred by granting relief to parties that were not before the court. Hudgeons preserved this complaint in the trial court by filing a plea to the jurisdiction pointing out to the trial court that paragraphs 4.13(b), 4.13(c), and 4.13(f)[5] of Hallmark's second motion for summary judgment titled, "[Hallmark's] motion for summary judgment on all remaining claims," not only purported to seek summary judgment from the trial court on Hallmark's declaratory judgment action but also urged the trial court to make declarations concerning "employees who received payments" under TESSCO's incentive compensation plans, "including Hallmark." Subsequently, Hallmark filed a notice of withdrawal of certain relief indicating he expressly "withdraws that portion of the requested relief being complained about by [Hudgeons] in Paragraphs 4.13(b), (c), and (f) of Plaintiff's Motion for Summary Judgment on all Remaining Claims and limits the requested relief to apply to Hallmark only."

"[A] motion for summary judgment shall state the specific grounds therefor." Tex. R. Civ. P. 166a(c); *McConnell v. Southside ISD,* 858 S.W.2d 337,

---

denial of Hudgeons's plea in abatement and alternative grounds supporting the trial court's summary judgment for Hallmark on Hudgeons's unjust enrichment and money had and received claims. *See* Tex. R. App. P. 47.1 (requiring appellate court to address only issues necessary to disposition of appeal).

[5]Although Hallmark's summary judgment motion, Hudgeons's plea to the jurisdiction, and Hallmark's notice of withdrawal all reference 4.13 followed by a subsection, the trial court's order stated 3.14.

341 (Tex. 1993) (holding that "a motion for summary judgment must itself expressly present the grounds upon which it is made. A motion must stand or fall on the grounds expressly presented in the motion."). When a motion for summary judgment asserts grounds A and B, it cannot be upheld on grounds C and D, which were not asserted, even if the summary judgment proof supports them. *McConnell,* 858 S.W.2d at 342; *see also, e.g.*, *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 384 n.2 (Tex. 1993) ("Of course, if a ground was abandoned or otherwise withdrawn, it would be improper for the appellate court to render [summary] judgment upon it.").

Here, paragraphs 4.13(b), (c), and (f) of the trial court's summary judgment limit the declaration of rights set forth in each of those paragraphs to Hallmark only. Hallmark expressly, by a written pleading, withdrew any request for any declaration of rights that could be interpreted to apply to parties not before the court on those grounds, and the trial court's summary judgment so limits the declaratory relief it granted on those grounds. *See, e.g.*, *McConnell*, 858 S.W.2d at 341.

To the extent Hudgeons's brief on appeal complains of the summary judgment relief granted by the trial court in paragraphs 4.13(k) and 4.13(l) of the summary judgment order, both of these provisions relate to Hallmark's assertion that Hudgeons is estopped from asserting his unjust enrichment and money had and received claims based on the "Post Closing Adjustment Release" signed by Hudgeons as stockholders' representative. But because we hold that Hudgeons

10

lacks standing, we need not address this alternative basis for upholding the trial court's summary judgment. *See Zimmerhanzel v. Green*, 346 S.W.3d 721, 724–25 (Tex. App.—El Paso 2011, pet. denied) ("When summary judgment is sought and granted on multiple grounds, we will affirm if any of the grounds is meritorious."). And we make it clear here that we do not address the propriety of paragraphs 4.13(k) or 4.13(l) of the trial court's summary judgment.

We overrule Hudgeons's issue B.

## VI. ATTORNEY'S FEES

In his issue F, Hudgeons asserts that the $33,474.60 in attorney's fees awarded to Hallmark on his declaratory judgment action were not equitable and just; Hudgeons does not challenge the attorney's fee award on any other ground. Hudgeons points out that Hallmark's counsel either currently or formerly represented three other TESSCO employees whom Hudgeons had also sued to recoup allegedly miscalculated and overpaid bonuses under TESSCO's incentive compensation plans. Hudgeons argues that "[t]he bulk of the work necessary for each pleading and filing in the instant case was previously undertaken, in whole or in part, for the benefit of the other similarly situated individuals represented by [Hallmark's counsel]." Hallmark, on the other hand, points out that Hudgeons does not challenge the amount of the attorney's fees, did not object to Hallmark's attorney's fees affidavit, and did not supply a controverting affidavit.

In "any proceeding" under the Uniform Declaratory Judgments Act, "the court may award costs and reasonable and necessary attorney's fees as are

11

equitable and just." Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 2015). The UDJA "entrusts attorney fee awards to the trial court's sound discretion, subject to the requirements that any fees awarded be reasonable and necessary, which are matters of fact, and to the additional requirements that fees be equitable and just, which are matters of law." *Bocquet v. Herring,* 972 S.W.2d 19, 21 (Tex. 1998).

We review a trial court's award of attorney's fees in a declaratory judgment action for an abuse of discretion. *Id.* It is an abuse of discretion for a trial court to rule arbitrarily, unreasonably, or without regard to guiding legal principles. *Id.* We must view the evidence in the light most favorable to the trial court's ruling, indulging every presumption in its favor. *Approach Res. I, L.P. v. Clayton,* 360 S.W.3d 632, 639 (Tex. App.—El Paso 2012, no pet.).

Hallmark's attorney's fees affidavit details the services rendered, the hours expended, and the hourly rates of the attorneys who worked on the case. It segregated fees for claims Hallmark initially asserted but dropped in his first amended petition.[6] It set forth and applied the *Arthur Andersen* factors and concluded that the services were necessary and that the fees charged were reasonable. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). Viewing the evidence in the light most favorable to the

---

[6]To the extent Hudgeons's arguments under his issue F may be liberally construed as asserting that Hallmark failed to segregate the attorney's fees he was not entitled to recover for the tort actions Hallmark initially pleaded, we note that Hallmark's attorney's fees affidavit does segregate these fees.

attorney's fees finding, and indulging every reasonable presumption in favor of the finding, the trial court did not act arbitrarily, unreasonably, or without regard to guiding legal principles in determining that an attorney's fee award of $33,474.60 to Hallmark on his declaratory judgment action was equitable and just. *See, e.g., Barshop v. Medina Cty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 637–38 (Tex. 1996) (recognizing trial court's broad discretion in granting or denying attorney's fees under UDJA); *Oake v. Collin Cty.*, 692 S.W.2d 454, 455 (Tex. 1985) (same).

We overrule Hudgeons's issue F.

## VII. CONCLUSION

Having overruled Hudgeons's issue A by determining that the trial court correctly granted summary judgment for Hallmark based on Hudgeons's lack of standing to assert claims for unjust enrichment and monies had and received, having determined that we need not address Hudgeons's issues C, D, and E, and having overruled Hudgeons's issues B and F, we affirm the trial court's summary judgment.

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL: WALKER, GABRIEL, and SUDDERTH, JJ.

DELIVERED: September 24, 2015

13