ACCEPTED
05-17-01484-cv
FIFTH COURT OF APPEALS
DALLAS, TEXAS
6/1/2018 4:50 PM
LISA MATZ
CLERK

**No. 05-17-01484-CV**

**IN THE COURT OF APPEALS
FIFTH DISTRICT OF TEXAS AT DALLAS**

FILED IN
5th COURT OF APPEALS
DALLAS, TEXAS
6/1/2018 4:50:08 PM
LISA MATZ
Clerk

PNC MORTGAGE, A DIVISION OF PNC BANK, N.A. SUCCESSOR TO
NATIONALCITY BANK AND NATIONAL CITY MORTGAGE, A DIVISION
OF NATIONAL CITY BANK OF INDIANA,
*Appellants,*

v.

JOHN HOWARD AND AMY HOWARD,
*Appellees.*

ON APPEAL FROM CAUSE NO. 199-01559-2010
199TH JUDICIAL DISTRICT COURT COLLIN COUNTY, TEXAS

**APPELLANTS' BRIEF**

Mark D. Hopkins
Texas State Bar No. 00793975
Shelley L. Hopkins
Texas State Bar No. 24036497
Hopkins Law, PLLC
3809 Juniper Trace, Suite 101
Austin, Texas 78738
(512) 600-4320 – Telephone
(512) 600-4326 – Facsimile
mark@hopkinslawtexas.com
shelley@hopkinslawtexas.com

Robert D. Forster, II.
Texas State Bar No. 24048470
Brian S. Engel
Texas State Bar No. 00789279
Barrett Daffin Frappier
Turner & Engel
4004 Belt Line Rd.
Addison, Texas 75001
(972) 386-5040 - Telephone
Robertfo@bdfgroup.com
brianen@bdfgroup.com

ATTORNEYS FOR APPELLANTS

Oral Argument Requested

## IDENTITY OF PARTIES AND COUNSEL

Pursuant to Texas Rule of Appellate Procedure 38.2(a)(1), Appellee certifies that the following is a complete list of all parties and counsel:

| | | |
|---|---|---|
| 1. | **Appellants:** | PNC, Mortgage, a Division of PNC Bank, Successor to National City Bank and National City Mortgage, a Division of National City Bank of Indiana |
| | Represented at trial by: | Robert F. Maris<br>Texas State Bar No. 12986300<br>Maris & Lanier, P.C.<br>3710 Rawlins Street, Suite 1550<br>Dallas, Texas 75219<br>rmaris@marislanier.com |
| | Represented on Appeal by: | Mark D. Hopkins<br>Texas State Bar No. 00793975<br>Shelley L. Hopkins<br>Texas State Bar No. 24036497<br>Hopkins Law, PLLC<br>3809 Juniper Trace, Suite 101<br>Austin, Texas 78738<br>(512) 600-4320 – Telephone<br>(512) 600-4326 – Facsimile<br>mark@hopkinslawtexas.com<br>shelley@hopkinslawtexas.com<br><br>and<br><br>**BARRETT DAFFIN FRAPPIER TURNER & ENGEL, LLP**<br>Robert D. Forster, II<br>State Bar No.: 24048470<br>4004 Belt Line Rd., Suite 100<br>Addison, Texas 75001<br>972-340-7901   (Telephone)<br>972-341-0734   (Facsimile) |

Brian Scott Engel
State Bar No.  00789279
3809 Juniper Trace, Suite 205
Austin, Texas 78738
RobertFo@bdfgroup.com
BrianEn@bdfgroup.com

2.   **Appellees:**                    John Howard and Amy Howard

Represented at trial
and on appeal by:                 J. Neal Prevost
Texas Bar No. 00788222
Prevost & Shaff
1518 Legacy Drive, Suite 260
Frisco, Texas 75034
(972) 239-6200 – Telephone
(972) 239-6205 – Facsimile
sdc@prevostandshaff.com

3.   **Trial Judge:**                  Hon. Angela Tucker
199th Judicial District Court
Collin County, Texas

# TABLE OF CONTENTS

APPELLANTS' BRIEF ................................................................................i

IDENTITY OF PARTIES AND COUNSEL............................................. ii

TABLE OF CONTENTS ..........................................................................iv

INDEX OF AUTHORITIES .....................................................................vi

STATEMENT OF THE CASE ....................................................................1

STATEMENT REGARDING ORAL ARGUMENT ...................................3

ISSUES PRESENTED ...............................................................................4

STATEMENT OF FACTS...........................................................................6

SUMMARY OF THE ARGUMENT.........................................................11

ARGUMENTS & AUTHORITIES...........................................................15

    I. ISSUE NO. 1...............................................................................16

        DID THE TRIAL COURT ERR IN FAILING TO FILE FINDINGS
        OF FACT AND CONCLUSIONS OF LAW AS REQUIRED BY
        TEXAS RULE OF CIVIL PROCEDURE 296 AND 297, AFTER
        BEING TIMELY REQUESTED TO DO SO UPON CONCLUSION
        OF THE BENCH TRIAL?

    II. ISSUE NO. 2 ..............................................................................16

        DID THE TRIAL COURT ERR IN GRANTING INTERLOCUTORY
        SUMMARY JUDGMENT IN FAVOR OF APPELLEES WHEN THE
        TRIAL COURT MISAPPLIED THE LAW TO THE UNDISPUTED
        SUMMARY JUDGMENT FACTS?

        A. The Trial Court's Determination that PNC lacked Authority
           to Foreclose was in error...................................................20

        B. The Substitute Trustee was Properly Appointed..............................25

    C.  Notice of a foreclosure is effective upon mailing and is not contingent on receipt. ..............................................................................27

    D.  A Wrongful Foreclosure Claim requires a showing of Both an irregularity with the Sale Process <u>and</u> an inadequate Sale Price. ..........................................................................................31

III.  <u>ISSUE NO. 3</u> ..............................................................................34

DID THE TRIAL COURT ERR BY FAILING TO GRANT JUDGMENT IN FAVOR OF APPELLANTS ON ITS CLAIM FOR EQUITABLE SUBROGATION DESPITE THE TOTALITY OF THE STIPULATED EVIDENCE ESTABLISHING APPELLANTS' RIGHT TO SUBROGATION?

IV.  <u>ISSUE NO. 4</u> ................................................................................41

DID THE TRIAL COURT ERR BY FAILING TO GRANT JUDGMENT IN FAVOR OF APPELLANTS ON ITS SUIT ON THE NOTE DESPITE THE TOTALITY OF THE STIPULATED EVIDENCE ESTABLISHING APPELLANTS' RIGHT TO COLLECT ON THE NOTE SEPARATE FROM ITS RIGHT TO ENFORCE ITS IN REM DEED OF TRUST LIEN?

CONCLUSION ..............................................................................................44

CERTIFICATE OF SERVICE.......................................................................46

CERTIFICATE OF COMPLIANCE ..............................................................47

# INDEX OF AUTHORITIES

**CASES**                                                                   **PAGE(S)**

*Ad Villarai, LLC v. Chan Il Pak*,
519 S.W.3d 132 (Tex. 2017)........................................................................17

*Adebo v. Litton Loan Servicing, L.P.*,
2008 WL 2209703, at *4 (Tex. App.–Houston [1st Dist.] May 29, 2008, no pet.)
........................................................................................................28, 29

*Amberboy v. Societe de Banque Privee*,
831 S.W.2d 793, 801 (Tex. 1992)...................................................................43

*Bank of Am. v. Babu*,
340 S.W.3d 917, 922 (Tex. App.--Dallas 2011 rev. denied) ........................37, 38

*Benchmark Bank v. Crowder*,
919 S.W.2d 657, 661 (Tex.1996)..................................................................35, 36

*Bierwirth v. BAC Home Loans Servicing, L.P.*,
2012 WL 3793190, (Tex. App. – Austin 2012) (pet. denied)............................42

*Brooks v. Hous. Auth. of El Paso*,
926 S.W.2d 316, 321 (Tex. App.—El Paso 1996)...........................................18

*Brown v. Zimmerman*,
160 S.W.3d 695, 700 (Tex. App.—Dallas 2005, no pet.)............................39, 40

*Burnett v. Manufacturer's Hanover Trust Co.*,
593 S.W. 2d 755 (Tex. App. – Dallas, 1979).................................................25, 26

*Calegon v. 2009 SWE, LLC*,
2009 WL 4288076 (Tex. App. – Houston [1st Dist.] 2017)..........................28, 29

*Carroll v. PNC Bank, N.A.*,
2014 WL 12530951 (N.D. Tex. 2014).........................................................21, 24

*Charter Nat'l Bank – Houston v. Stevens,*
 781 S.W.2d 368, 371 (Tex. App. – Houston [14ᵗʰ Dist.] 1989, writ denied).......31

*Chase Home Fin., L.L.C. v. Cal W. Reconveyance Corp.*,
 309 S.W.3d 619, 629 (Tex. App.—Houston [14th Dist.] 2010, no pet.).............37

*Cherne Indus., Inc. v. Magallanes*,
 763 S.W.2d 768, 772 (Tex. 1989)...................................................................17, 18

*CitiMortgage, Inc. v Roper,*
 2013 WL 6465637 (Tex. Civ. App. – Austin 2013) ............................................21

*City of Houston v. Clear Creek Basin Authority,*
 589 S.W.2d 671 (Tex. 1979) ...........................................................................29, 30

*City of Keller v. Wilson,*
 168 S.W.3d 802, 824 (Tex.2005).........................................................................20

*Croteau v. CitiMortgage, Inc.,*
 2014 WL 119968 (E.D. Tex. 2014) ......................................................................24

*Downer v. Aquamarine Operators, Inc.,*
 701 S.W.2d 238, 241–42 (Tex.1985)....................................................................38

*Ermisch v. HSBC Bank, N.A.,*
 2015 WL 12862878 (W.D. Tex. Feb. 9, 2015)......................................................23

*Faires v. Cockerell*,
 88 Tex. 428, 31 S. W. 190, 194, (Tex. Comm'n App. 1932, opinion adopted) ..38

*Farrell v. Hunt*,
 714 S.W.2d 298, 299 (Tex. 1986).........................................................................32

*FDIC v. Morris*,
 782 S.W.2d 521, 524 (Tex. App.-Dallas 1989, no writ)......................................18

*First Nat'l Bank of Kerrville v. O'Dell*,
 856 S.W.2d 410, 415 (Tex.1993)..........................................................................38

*Frymire Eng'g Co. ex rel. Liberty Mut. Ins. Co. v. Jomar Int'l, Ltd.*,
  259 S.W.3d 140, 142 (Tex. 2008)..........................................................14, 37, 38

*Galbraith-Foxworth Lumber Co. v. Long*,
  5 S.W.2d 162, 167 (Tex. Civ. App.—Dallas 1928).......................................38, 39

*Givens v. Midland Company, et. al*,
  393 S.W.3d 876 (Tex. Civ. App. – Dallas, 2012)................................................20

*Graham Cent. Station, Inc. v. Peña*,
  442 S.W.3d 261, 263 (Tex. 2014).........................................................................17

*Grubbs v. Houston First Am. Sav. Ass'n*,
  730 F.2d 236, 241 (5th Cir. 1984) .......................................................................30

*Guillot v. Hix*,
  838 S.W.2d 230, 232-33 (Tex. 1992) ...................................................................39

*Holy Cross Church of God in Christ v. Wolf*,
  44 S.W.3d 562, 566 (Tex. 2001)...........................................................................40

*In re Harmon*,
  444 B.R. 696, 711 (Bankr. S.D. Tex. 2011), *on reconsideration,*
  2011 WL 1457236 (Bankr. S.D. Tex. Apr. 14, 2011) .........................................37

*In re Rubarts*,
  896 F.2d 107, 115 (5th Cir. 1990) ........................................................................36

*In re Taddeo*,
  685 F.2d 24, 29 (2d Cir. 1982)..............................................................................30

*Interfirst Bank Dallas, N.A. v. U.S. Fid. & Guar. Co.*,
  774 S.W.2d 391, 397 (Tex. App.-Dallas 1989, writ denied) .........................37, 38

*LaSalle Bank Nat. Ass'n v. White*,
  246 S.W.3d 616, 619-20 (Tex. 2007) ..............................................................35, 36

*Lazarides v. Farris,*
  367 S.W.3d 788, 799 (Tex. App.-Houston [14th Dist.] 2012, no pet.)................21

*Leonard v. Brazosport Bank of Texas*,
628 S.W. 2d 216, 220 (Tex. App—Houston [14th Dist.] 1982,
writ ref'd n.r.e.)..................................................................................................37

*Lewis v. Wells Fargo Bank, N.A.*,
939 F.Supp.2d 634 (N.D. Tex. 2013) ...........................................................21, 24

*Liberty Mut. Fire Ins. v. Laca*,
243 S.W.3d 791, 794 (Tex. App. - El Paso, 2007) ...............................................17

*Lusk v. Palmer*,
114 S.W.2d 677 (Tex. Civ. App. – Amarillo 1938, writ dism'd) ........................40

*Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*,
289 S.W. 3d 844, 848 (Tex. 2009).......................................................................20

*Marban v. PNC Mortg.*,
2013 WL 3356285, at  *5 (N.D. Tex. 2013).........................................................24

*Martins v. BAC Home Loans Servicing, L.P.*,
722 F.3d 249, 255 (5th Cir.).................................................................................22

*Murray v. Cadle Co.*,
257 S.W.3d 291, 299 (Tex. App.—Dallas 2008, *pet. denied*).................14, 37, 39

*Nixon v. Mr. Prop. Mgmt. Co.*,
690 S.W.2d 546, 548 (Tex.1985)..........................................................................20

*NSL Property Holdings, LLC v. Nationstar Mortgage, LLC*,
2017 WL 3526354 (Tex. App. – Fort Worth 2017)..............................................33

*Office of Pub. Util. Counsel v. Public Util. Comm'n.*,
878 S.W.2d 598, 600 (Tex.1994)..........................................................................21

*Oury v. Saunders,*
77 Tex. 278, 13 S.W. 1030, 1031 (Tex. 1890) .....................................................39

*Providence Institution for Savings v. Sims*,
441 S.W. 2d 516, 520 (Tex. 1969).......................................................................37

*Randall v. Jennings,*
 788 S.W.2d 931 (Tex. App. – Houston [14th Dist.] 1990)............................11, 18

*Richardson v. Kent,*
 47 S.W.2d 420, 425 (Tex. Civ. App. – Dallas 1932)...........................................32

*Rourk v. Cameron Appraisal Dist.,*
 305 S.W.3d 231 (Tex. App. – Corpus Christi 2009) .....................................34, 41

*Salazar v. BAC Home Loans Servicing, L.P.,*
 2012 WL 995296, at *4 (N.D. Tex. 2012)..........................................................24

*Smart v. Tower Land & Inv. Co.,*
 597 S.W.2d 333, 338 (Tex. 1980)........................................................................39

*Smith v. The Weber Co., Inc.,*
 110 S.W.3d 611 (Tex. App. – Dallas 2003)....................................................17, 18

*Stanley v. CitiFinancial Mortg. Co.,*
 121 S.W.3d 811, 817 (Tex. App.—Beaumont 2003, pet. denied).......................29

*Stephens v. LPP Mortg.,*
 316 S.W.3d 742, 747 (Tex. App.-Austin 2010, pet. denied) .............................42

*Swiley v. Hughes,*
 488 S.W.2d 64, 67 (Tex. 1972)...........................................................................30

*Tenery v. Tenery,*
 932 S.W.2d 30 (Tex. 1996)..................................................................11, 17, 18

*Terra XXI, Ltd. v. Harmon,*
 279 S.W.3d 781, 788 (Tex. App. – Amarillo 2007) ...........................................32

*Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.,*
 253 S.W.3d 184, 192 (Tex. 2007).......................................................................20

*Texas Commerce Bank Nat'l Ass'n v. Liberty Bank*,
 540 S.W.2d 554, 557 (Tex. Civ. App.—Houston [14th Dist.] 1976, no writ).....36

*Townsend v. Barrett Daffin Frappier Turner & Engel, LLP,*
2013 WL 5874607 at *8 (Tex. App. – Beaumont 2013) ...............................31, 32

*United States v. ITT Cont'l Baking Co.*,
420 U.S. 223, 236–37, 95 S.Ct. 926, 43 L.Ed.2d 148 (1975)............................30

*Wasserberg v. Flooring Servs. of Texas, LLC,*
376 S.W.3d 202 (Tex. App. – Houston [1st Dist.] 2012, no pet.) .................12, 24

*Water Dynamics, LTD. v. HSBC Bank USA, Nat. Ass'n,*
509 Fed. Appx. 367 (5th Cir. 2013)...................................................................32

*Wilmington Trust, N.A. v. Rob,*
2018 WL 2304600 (5th Cir. May 21, 2018) .......................................................33

*WMC Mortg. Corp. v. Moss,*
2011 WL 2089777, at *7 (Tex. App. – Houston [1st Dist.] 2011, no pet.) ..........29

## STATUTES

11 U.S.C. 1322 (b)(5)........................................................................................30

11 U.S.C. 1322(b)(3).........................................................................................30

12 U.S.C. § 215a(e) ..........................................................................................23

Tex. Bus. & Comm. Code §1.201(b)(21)(A) .......................................................43

Tex. Bus. & Comm. Code 3.104 ........................................................................42

Tex. Bus. Org. Code §10.008(2) ........................................................................23

Tex. Civ. Prac. & Rem. Code § 3.118.................................................................42

Tex. Civ. Prac. & Rem. Code §16.035......................................................33, 39, 40

Tex. Prop. Code §51.002.............................................................13, 21, 27, 28, 29

Tex. Prop. Code § 51.002 (e) .....................................................................13, 28, 29

Tex. Prop. Code §51.0025..................................................................................21

Tex. Prop. Code §51.0001(3) .............................................................................21

Tex. Prop. Code §51.0001 (4). ...........................................................................21

## RULES

Tex. R. App. P. 44.1(a)(2); ...........................................................................18

Tex. R. App. P. 44.4 ....................................................................................18

Tex. R. App. P. 9.4 ......................................................................................47

Tex. R. App. P. 9.4(i)(1) .............................................................................47

Tex. R. App. P. 9.4(i)(3) .............................................................................47

Tex. R. Civ. P. 166a(c) ...............................................................................20

Tex. R. Civ. P. 296 ..................................................................4, 11, 16, 17

Tex. R. Civ. P. 297 ..................................................................4, 11, 16, 17

Tex. R. Evid. 201(b) ...................................................................................21

## STATEMENT OF THE CASE

Appellants PNC, Mortgage, a Division of PNC Bank, Successor to National City Bank ("PNC" or "Successor Bank") and National City Mortgage, a Division of National City Bank of Indiana ("National City" or "Predecessor Bank") appeal the Trial Court's grant of an interlocutory summary judgment in favor of John Howard and Amy Howard (collectively "Howards"). (CR 518-520). Following the grant of an interlocutory summary judgment, a nonjury trial was held that resulted in the 199th Judicial District Court of Collin County, Texas ("Trial Court") entering a Final Judgment in favor of the Howards. The judgment was entered by the Trial Court on October 11, 2017. (CR 900-903). Appellants also appeal the Trial Court's Final Judgment.

On October 26, 2017, Appellants requested that the Trial Court file Findings of Fact and Conclusions of Law with respect to the nonjury trial. (CR 906-907). After the Trial Court did not file its findings, on November 27, 2017, Appellants filed a Notice of Past Due Findings of Fact and Conclusions of Law. (CR 926-927). No findings were subsequently filed by the Trial Court.

Appellants filed a Motion for New Trial on November 10, 2017. (CR 911-925). The Trial Court took no action on Appellants' Motion for New Trial.

1

Appellants filed a Notice of Appeal of both the Partial Summary Judgment and Final Judgment on December 27, 2017.  (CR 928).

## STATEMENT REGARDING ORAL ARGUMENT

Appellants PNC, Mortgage, a Division of PNC Bank, Successor to National City Bank and National City Mortgage, a Division of National City Bank of Indiana respectfully request that the Court grant oral argument in this Case. Oral argument would give the Court a more complete understanding of the facts presented in this appeal and may significantly aid the Court in deciding the issues presented.

# ISSUES PRESENTED

**ISSUE NO. 1**

DID THE TRIAL COURT ERR IN FAILING TO FILE FINDINGS OF FACT AND CONCLUSIONS OF LAW AS REQUIRED BY TEXAS RULE OF CIVIL PROCEDURE 296 AND 297 AFTER BEING TIMELY REQUESTED TO DO SO UPON THE CONCLUSION OF THE BENCH TRIAL?

**ISSUE NO. 2**

DID THE TRIAL COURT ERR IN GRANTING INTERLOCUTORY SUMMARY JUDGMENT IN FAVOR OF APPELLEES WHEN THE TRIAL COURT MISAPPLIED THE LAW TO THE UNDIPSUTED SUMMARY JUDGMENT FACTS?

**ISSUE NO. 3**

DID THE TRIAL COURT ERR BY FAILING TO GRANT JUDMGENT IN FAVOR OF APPELLANTS ON ITS CLAIM FOR EQUITABLE SUBROGATION DESPITE THE TOTALITY OF THE STIPULATED EVIDENCE ESTABLISHING APPELLANTS' RIGHT TO SUBROGATION?

4

**ISSUE NO. 4**

DID THE TRIAL COURT ERR BY FAILING TO GRANT JUDMGENT IN FAVOR OF APPELLANTS ON ITS SUIT ON THE NOTE DESPITE THE TOTALITY OF THE STIPULATED EVIDENCE ESTABLISHING APPELLANTS' RIGHT TO COLLECT ON THE NOTE SEPARATE FROM ITS RIGHT TO ENFORCE ITS IN REM DEED OF TRUST LIEN?

## STATEMENT OF FACTS

This is a home foreclosure matter involving real property commonly known as 5783 Versailles Avenue, Frisco, Texas 75034 ("Property"). On March 24, 2005, John and Amy Howard ("Howards" or "Appellees"), borrowed $894,900.00 to refinance the Property. In connection with the refinance[1], the Howards executed a Promissory Note (CR 225-229 ) and a Deed of Trust that pledged the Property as collateral for repayment of the Note. (CR 202-224). The Howards ceased making payments on the Note on November 1, 2008 (CR 801). The Howards still reside in the Property despite not making payments on the Note in almost a decade. (CR 102). PNC has paid the real property taxes on the Property for all tax years since 2008.

The original lender of the Note and beneficiary under the Deed of Trust was National City. (CR 799). National City merged with and into several other lenders over the years, with the surviving entity being PNC Mortgage, a Division of PNC Bank, N.A. Successor to National City Bank ("PNC"). The merger history of the original lender into the surviving merged entity is both a matter of public record and stipulated fact between the parties.[2]

---

[1] The parties stipulated that $888,286.25 of the $894,000.00 refinance Note was utilized to pay off the original purchase money notes and liens. (CR 800).

[2] The merger history is as follows:
   a. National City Mortgage a Division of National City Bank of Indiana is the original lender;

6

As a result of the Howards inability or unwillingness to pay the Note, foreclosure proceedings were commenced by PNC in 2009. (CR 103-106). The Howards filed bankruptcy to delay the looming foreclosure, and within the bankruptcy proceedings the Howards judicially admitted that PNC was their mortgagee. (CR 580-582)(RR. Vol. 3, Defendant's Exhibit 17, 20). During the bankruptcy, PNC sought relief from the automatic stay to pursue foreclosure. (RR Vol. 3, Defendant's Exhibit 29.)[3] The Howards judicially admitted that PNC is one of their secured creditors in connection with the Howards' entry of an Agreed Order Conditioning the Automatic Stay. (RR Vol. 3, Defendant's Exhibit 26.).

To avoid immediate foreclosure, the Howards entered into a binding agreement with PNC to pay installments to cure their post-petition default and put the loan back on its regular installment track. (RR Vol. 3, Defendant's Exhibit 26.) The agreement to forego immediate foreclosure and put the loan back on an installment basis is included in an Agree Order Conditioning Stay signed by the

---

    b.  National City Mortgage Bank of Indiana elected to transfer the Note from a division of itself to a wholly owned subsidiary, the subsidiary being National City Mortgage Co. a subsidiary of National City Bank; (CR 606-610)(the endorsed Note).

    c.  National City Bank of Indiana (and all of its wholly owned subsidiaries) merged with and into National City Bank on July 22, 2006. (CR 748);

    d.  National City Bank merged with and into PNC Bank, N.A. on November 6, 2009. (CR 748); and

    e.  At the time of the foreclosure sale the mortgagee (and mortgage servicer) was PNC Mortgage, a Division of PNC Bank, Successor to National City Bank (CR 109-110).

[3] The bankruptcy court recognizing that "PNC Mortgage, a Division of PNC Bank, N.A. Successor to National City Bank its Assigns and/or Successors in Interest" is the secured creditor of the Howards. (RR. Vol. 3, Defendant's Exhibit 26).

7

bankruptcy court on September 29, 2009. The Howards did not perform this agreement, but during the bankruptcy **did pay** through the trustee the sum of $1,012.50 to PNC on the mortgage. (RR Vol. 3, Defendant's Exhibit 20). The bankruptcy was subsequently dismissed (RR Vol. 3, Defendant's Exhibit 19). PNC accelerated the Note again. (RR Vol. 3, Defendant's Exhibit 21). Contemporaneously with accelerating the Note on March 12, 2010, PNC (as the mortgagee and its own mortgage servicer) gave notice of a nonjudicial foreclosure sale to be held on April 6, 2010. *Id.* The Property was sold at the noticed foreclosure sale to PNC for $825,000.00. (RR Vol. 3, Defendant's Exhibit 22).

The Howards subsequently filed suit alleging that PNC wrongfully foreclosed. The Howards alleged, contrary to their bankruptcy judicial admissions, that PNC did not have authority to act in selling the Property. (CR 22-28). The basis of the Howards' claim for wrongful foreclosure stems from PNC's accidental use of its pre-merger name within its Notice of Acceleration[4] and the resulting Substitute Trustee's Deed.[5] *Id.* The Howards further alleged that the foreclosure sale was

---

[4] Within the Notice of Acceleration sent on March 12, 2010, PNC correctly listed itself as its own mortgage servicer but used both its pre-merger and post-merger name in describing itself as the mortgagee (listing itself as National City Mortgage, a Division of National City Bank of Indiana *** PNC Mortgage, a Division of PNC Bank, N.A. Successor to National City Bank). (CR 109).

[5] Within the Substitute Trustee's Deed PNC correctly identifies itself as its own mortgage servicer but then uses its pre-merger name in describing itself as the mortgagee (listing itself as National City Mortgage, a Division of National City Bank of Indiana). (CR 113).

improper because Mr. Howard did not *receive* a notice of the foreclosure sale as required by statute.

The Howards moved for a partial summary judgment based upon the reasons described above. (CR 67-105). PNC filed a summary judgment response (CR 118-131) and sur-reply (CR 142-148) asserting that the Howards are barred from attacking PNC's standing to foreclose, and that the Howards have also misconstrued Texas law regarding when a notice of foreclosure sale is deemed to have been delivered. The Trial Court granted partial summary judgment in favor of the Howards setting aside the foreclosure sale as void. (CR 518-520).

The remaining issues of PNC's right to collect on the Note and PNC's right to equitable subrogation were subsequently tried to the bench. The Parties stipulated at the bench trial that: (1) the Note is in default (CR 801), (2) the Proceeds from the Note were used to pay off two prior existing secured notes (CR 800), and (3) PNC paid the taxes on the Property for years 2008- 2016 (RR. Vol. 3, Exhibit 29). Upon the conclusion of bench trial, the Trial Court took the case under advisement.

After trial, PNC discovered a piece of evidence (a proof of mailing of the Notice of Acceleration to Mr. Howard) that had previously been unable to be located. PNC therefore moved for the admission of the additional evidence (CR 818 – 894). The Trial Court denied the motion on September 18, 2017. (RR. Vol. 3, page 40, line 8). Thereafter the Trial Court signed a Final Judgment in favor of the Howards

on October 11, 2017.  (CR 900).  PNC filed a Motion for New Trial (CR 911-925), on which the Trial Court took no action.

PNC's Notice of Appeal of the Partial Summary Judgment and the Final Judgment was filed on December 27, 2017.  (CR 928-929).

## SUMMARY OF THE ARGUMENT

**A.** **Failure of the Trial Court to file Findings of Fact is harmful error.**

PNC timely requested the court issue findings of fact and conclusions of law pursuant to Tex. R. Civ. P. 296. Once the timely request was made, the Court was required by Tex. R. Civ. P. 297 to issue findings of fact and conclusions of law, yet the Trial Court failed to do so. If a trial court does not file findings of fact and conclusion of law, it is presumed harmful error unless the record shows the appellant suffered no harm. *See, Tenery v. Tenery,* 932 S.W.2d 30 (Tex. 1996). In a complicated case, such as this, when there are disputed facts or two or more grounds for recovery or defenses, the inference of harm cannot be overcome. *See, Randall v. Jennings,* 788 S.W.2d 931 (Tex. App. – Houston [14th Dist.] 1990).

**B.** **The Trial Court misapplied the law in granting summary judgment.**

In granting the Howards a partial summary judgment prior to trial, the Trial Court misapplied Texas foreclosure law in four distinct ways.

**First**, the Trial Court erred in determining that PNC did not possess the ability to foreclose its Deed of Trust lien interest. The merger history of National City (the predecessor lender) with and into PNC (the successor by merger lender) is a matter of public record and was also stipulated between the parties. No formal assignment of interest is necessary between merging entities. PNC (no matter how it misidentified itself by using its "pre-merger name" within some of the foreclosure

11

documents) had the authority to foreclose as it did. Texas law is clear; no assignment of a deed of trust between merging entities is ever necessary. Texas law provides that all rights of parties to a merger are allocated to and vested in the surviving entity without need of formal transfer of assignment. *See Wasserberg v. Flooring Servs. of Texas, LLC*, 376 S.W.3d 202 (Tex. App. – Houston [1st Dist.] 2012, no pet.).

**Second,** the Trial Court erred in invalidating the foreclosure sale based upon what it perceived to be a defective Appointment of Substitute Trustee. (CR 519). It is true that when a deed of trust provides for specific formalities in the appointment of a substitute trustee, then those formalities must be strictly followed. However, when a deed of trust specifies that no such formalities are necessary, then no formal Appointment of Substitute Trustee needs to be recorded in the local real property records. The Howard Deed of Trust provides that a substitute trustee may be appointed, "without the necessity of any formality other than a designation by Lender in writing." (CR 214). PNC adequately designated Greg Bertrand as one of the substitute trustees within PNC's notice of foreclosure sale (CR 108-112) wherein that notice listed Mr. Bertrand as a substitute trustee. Given the foregoing, even if PNC's notice of appointment of substitute trustee (CR 107) was defective (because PNC used its pre-merger name within the recorded Notice), it is of no consequence given that that the recorded notice of appointment of substitute trustee was not even necessary to effectuate the valid appointment of Mr. Bertrand.

12

**Third,** the Trial Court erred in determining that the foreclosure sale was defective due to Mr. Howard not physically *receiving* a notice of foreclosure sale. Contrary to Mr. Howard's summary judgment evidence that he did not *receive* the notice of foreclosure sale, Texas black letter law provides that a notice of foreclosure sale is deemed effective *upon mailing* and not upon physical receipt of the notice by the borrower. *See,* Tex. Prop. Code §51.002(e) The Trial Court misapplied §51.002(e) in drawing the incorrect legal conclusion that a notice of sale is improper based solely upon testimony that a borrower did not physically *receive* the notice of the sale. Actual receipt of the notice is not and never has been required under Tex. Prop. Code §51.002(e).

**Fourth,** even if there were irregularities with the foreclosure sale as alleged by Howard, the Trial Court still erred in determining that those *irregularities* invalidated the foreclosure sale. Texas black letter law is that in order to recover on a claim of wrongful foreclosure the borrower must show that an irregularity with the foreclosure sale *resulted in a grossly inadequate sales price*. The Howards failed to establish that the Property was sold at sale for an inadequate price. Texas law provides that any price at sale, that is greater than 50% of a property's value, is a sufficient sales price as a matter of law. Here the Property sold at sale for $825,000.00, and at the time of sale the Property was valued at $917,575.00 by the Collin County Appraisal District. (RR. Vo1. 3, Defendant's Exhibit 29).

13

**C.** **PNC was entitled to Equitable Subrogation at a minimum.**

Even if summary judgment were properly granted in favor of the Howards (which PNC asserts was not), the Trial Court erred in determining, after the conclusion of the bench trial, that PNC was not entitled to equitable subrogation and/or the ability to collect on its Note. The stipulated facts provided that PNC was the holder of the Note and beneficary under the Deed of Trust (CR 799-802). The stipulated evidence furher provided that $888,286.25 in proceeds from the Note were used to extinguish two prior notes and deeds of trust encumbering the Property. (CR 800).

The doctrines of equitable subrogation and the ability to collect on a Note are straightforward. Under the doctrine of equitable subrogation, a lender who advances funds to pay off a prior lien on property that secures the lender's loan steps into the prior lienholder's shoes with all the prior lienholder's rights, remedies and securities. *Murray v. Cadle Co.*, 257 S.W.3d 291, 299 (Tex. App.- Dallas 2008, pet. denied). Equitable subrogation applies "in every instance in which one person, not acting voluntarily, has paid a debt for which another is primarily liable and which in equity should have been discharged by the latter." *Frymire Eng'g Co. ex rel. Liberty Mut. Ins. Co. v. Jomar Int'l, Ltd.*, 259 S.W.3d 140, 142 (Tex. 2008). As for collection on the Note, the stipulated evidence was clear. The Howards made the Note, were in

14

default under the terms of the Note, and PNC is the holder of the Note. As such PNC is entitled to collect on the Note.

The trial record is absent of any evidence upon which the Trial Court could have concluded that equitable subrogation does not apply, or concluded that PNC does not possess the right to collect on its Note.

## ARGUMENTS & AUTHORITIES

This appeal turns on whether PNC had standing to act when it did in foreclosing on the Property. Despite PNC's error in misidentifying itself within the Notice of Acceleration, Notice of Sale and Appointment of Substitute Trustee, PNC possessed the authority to act because it was both the holder of the Note that is endorsed in blank, and also the beneficiary under the Deed of Trust, as the successor by merger to the original lender. The Howards also judicially admitted, within Ms. Howard's bankruptcy proceeding, that PNC has been their mortgagee (RR Vol. 3, Defendant's Exhibit 26) and payments were made to PNC within the bankruptcy (RR. Vol. 3, Defendant's Exhibit 20).

The Trial Court erred in granting partial summary judgment in striking down PNC's foreclosure sale. The Trial Court next erred when it determined at trial that PNC is not entitled to equitable subrogation, as well as not entitled to collect on its

Note (separate and apart from its *voided* in rem foreclosure rights against the Property under the Deed of Trust).

## I.     ISSUE NO. 1

**Did the Trial Court err in failing to file findings of fact and conclusions of law as required by Texas Rule of Civil Procedure 296 and 297, after being timely requested to do so upon conclusion of the bench trial?**

The case proceeded to a bench trial after the Court granted a partial summary judgment. The issues left for determination at trial were:

1) The enforceability of PNC's Deed of Trust lien;

2) PNC's right to collect on its Note separate and apart from its in rem right to foreclose its Deed of Trust lien against the Property; and

3) PNC's right to equitable subrogation if its Deed of Trust lien were unenforceable.

The Trial Court granted Final Judgment in favor of the Howards on October 11, 2017. (CR 900-903). The Final Judgment determined that PNC's Deed of Trust lien interest was void and unenforceable, that PNC's Note was not only uncollectable but was void and unenforceable, that PNC was not entitled to equitable subrogation, and that PNC owed the Howards attorney's fees. (CR 900-903).

Texas Rule of Civil Procedure 296 provides that "In any case tried in the district or county court without a jury, any party may request the court to state in writing its findings of fact and conclusions of law." Tex. R. Civ. P. 296. The rule further provides that the requesting party must file its request within twenty days

16

after the court enters it judgment. *Id.* PNC timely complied with Rule 296 by filing its Request for Findings of Fact and Conclusions of Law fifteen days after judgment. (CR 906-907). After receiving no response from the Trial Court, PNC then complied with Texas Rule of Civil Procedure 297 in filing its Notice of Past Due Findings of Fact and Conclusions of Law within thirty days of PNC's initial notice to the Trial Court. *See,* Tex. R. Civ. P. 297 and (CR 926-927).

The Trial Court subsequently failed to file the requested findings. The trial court's duty to make such findings, in response to a timely request, is mandatory. Tex. R. Civ. P. 297; *Liberty Mut. Fire Ins. v. Laca,* 243 S.W.3d 791, 794 (Tex. App. - El Paso, 2007); *see also Cherne Indus., Inc. v. Magallanes*, 763 S.W.2d 768, 772 (Tex.1989). As explained by the Texas Supreme Court, "[I]f a court fails to file findings when the facts are disputed, the burden of rebutting every presumed finding can be so burdensome that it effectively "prevent[s the appellant] from properly presenting its case to the court of appeals or this Court." *Ad Villarai, LLC v. Chan Il Pak*, 519 S.W.3d 132 (Tex. 2017) *relying on, Graham Cent. Station, Inc. v. Peña*, 442 S.W.3d 261, 263 (Tex. 2014); *Tenery*, 932 S.W.2d at 30 (Tex. 1996). As further provided by the Dallas Court of Appeals,

> The absence of written findings and conclusions would permit us to affirm the trial court's judgment on any legal theory supported by the evidence. To confront the scope of our permissible review, Smith would have to broaden his appeal to challenge all possible grounds supporting the judgment. Smith therefore suffers the same degree of

17

harm because of the trial court's failure to make findings and conclusions as if the judge had made no oral pronouncements at all.

*FDIC v. Morris,* 782 S.W.2d 521, 524 (Tex. App.-Dallas 1989, no writ); also see *Smith v. The Weber Co., Inc.,* 110 S.W.3d 611 (Tex. App. – Dallas 2003).

If the trial court does not file findings of fact and conclusions of law, it is presumed harmful error unless the record affirmatively shows the appellant suffered no harm. *Tenery v. Tenery,* 932 S.W.2d 30 (Tex. 1996). However, "In a complicated case [such as this case] with disputed facts or two or more grounds for recovery or defenses, the inference of harm cannot be overcome." *Randall v. Jennings,* 788 S.W.2d 931 (Tex. App. – Houston [14th Dist.] 1990).

When the trial court's failure is harmful [as it is herein], the preferred remedy is for the appellate court to direct the trial court to file the missing findings. *See Cherne Indus., Inc. v. Magallanes*, 763 S.W.2d 768, 772 (Tex. 1989) (instructing court of appeals to direct trial court to correct its error by filing findings and conclusions). Texas Rule of Appellate Procedure 44.4 also requires an appellate court to direct a trial court to correct any correctable error that prevents "the proper presentation of a case to the court of appeals." Tex. R. App. P. 44.4. If after being instructed to do so by the appellate court, a trial court still fails to file the findings, the appellate court must reverse the trial court's judgment and remand the case for a new trial. Tex. R. App. P. 44.1(a)(2); *Brooks v. Hous. Auth. of El Paso*, 926 S.W.2d 316, 321 (Tex. App.—El Paso 1996).

As presented in Issue No. 2 below, PNC asserts that partial summary judgment was granted in error which requires the reversal of the Trial Court's Final Judgment with a remand for a new trial. However, in the event the Court determines the summary judgment to have been properly granted, PNC respectfully requests that this Court instruct the Trial Court to file findings of fact and conclusions of law (as to the bench trial) so that PNC may better show this Court where reversible error exists within the trial record.

## II.  ISSUE NO. 2

**Did the Trial Court err in granting interlocutory summary judgment in favor of Appellees when the Trial Court misapplied the law to the undisputed summary judgment facts?**

The Trial Court committed reversal error in granting a partial summary judgment determining that PNC's foreclosure sale was void for lack of authority by PNC to appoint the substitute trustee and conduct the foreclosure sale. The Trial Court's order re-vested title to the Property in the Howards. (CR 518-520). In granting Partial Summary Judgment the Trial Court misapplied Texas foreclosure law in four distinct ways:

1) The Trial Court improperly determined that PNC lacked authority to act as it was the successor by merger to the original lender;

2) The Trial Court erred in determining that the Appointment of Substitute Trustee was defective and further erred in determining that the recorded Appointment was even necessary given the terms of the Deed of Trust;

19

3) The Trial Court erred in determining that Mr. Howard's failure to physically receive a copy of the Notice of Foreclosure Sale invalidated the sale; and

4) The Trial Court erred in determining that the alleged irregularities in the foreclosure sale process created an invalid sale when the Howards failed to establish causation that the irregularities resulted in an inadequate sale price.

**Standard of Review of Summary Judgment**.  An appellate court reviews a trial court's ruling on a summary judgment motion de novo.  *See, Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding,* 289 S.W. 3d 844, 848 (Tex. 2009).  As noted by the Dallas Court of Appeals regarding its review of summary judgment,

> We review a trial court's decision to grant or deny a motion for summary judgment de novo. *See Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.,* 253 S.W.3d 184, 192 (Tex. 2007). The standard of review for traditional summary judgment is well established. *See Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548 (Tex.1985). The movant has the burden  to demonstrate that no genuine issue of material fact exists and he is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Nixon,* 690 S.W.2d at 548–49. We consider the evidence in the light most favorable to the nonmovant. *See Nixon,* 690 S.W.2d at 549. Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in his favor. *City of Keller v. Wilson,* 168 S.W.3d 802, 824 (Tex.2005).

 *Givens v. Midland Company, et. al,* 393 S.W.3d 876 (Tex. Civ. App. – Dallas, 2012).


A.      **The Trial Court's Determination that PNC lacked Authority to Foreclose was in error.**

It is undisputed that the original lender (National City Mortgage, a Division of National City Bank of Indiana) merged with and into PNC (PNC Mortgage, a

Division of PNC Bank, Successor to National City Bank).[6] The merger documents are publicly available[7] and Ms. Howard judicially admitted within her bankruptcy proceeding that PNC is the both the holder of the Note and beneficiary under the Deed of Trust since at least December 29, 2009. (CR 801)(RR. Vol. 3, Exhibit 26).[8] As the holder of the Note and/or beneficiary of the Deed of Trust, PNC is the Howards' "mortgagee" as that term is defined by Texas Property Code §51.0001(3)&(4). PNC is also its own mortgage servicer, a servicer being permitted to assist with the administration of a foreclosure as provided by Texas Property Code §§51.002 and 51.0025.

---

[6] National City Bank of Indiana (along with all of its divisions and subsidiaries) merged with and into National City Bank on July 22, 2006. Thereafter, on November 6, 2009, National City Bank merged with and into PNC Bank, N.A. A court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Tex. R. Evid. 201(b). As provided by the Austin Court of Appeals in *CitiMortgage, Inc. v Roper,* the merger history of a mortgagee is capable of being judicially noticed and can be done so sua sponte, as well as for the first time on appeal. *CitiMortgage, Inc. v Roper,* 2013 WL 6465637 (Tex. Civ. App. – Austin 2013); relying on, *Office of Pub. Util. Counsel v. Public Util. Comm'n.,* 878 S.W.2d 598, 600 (Tex.1994); *Lazarides v. Farris,* 367 S.W.3d 788, 799 (Tex. App.-Houston [14th Dist.] 2012, no pet.); also see *Lewis v. Wells Fargo Bank, N.A.*, 939 F.Supp.2d 634 (N.D. Tex. 2013).

[7] *See,* Office of the Comptroller of Currency Conditional Approval #928, November 2009, regarding the approval of the merger of PNC and National City. PNC's merger history has also been the subject of past litigation and judicially noticed. See*, Carroll v. PNC Bank, N.A.,* 2014 WL 12530951 (N.D. Tex. 2014).

[8] PNC even questions the need for recitation of the merger history given Ms. Howard's judicial admission within her bankruptcy that at all relevant times to the foreclosure process PNC was in fact her mortgagee.

21

Despite PNC admittedly being the holder of the Note, beneficiary under the Deed of Trust, and its own mortgage servicer, the Howards still brought suit challenging PNC's authority to foreclose[9] its Deed of Trust lien.

After PNC undisputedly became the mortgagee, on March 12, 2010, PNC (as its own mortgage servicer) sent the Howards' Notice of Acceleration and a Notice of Foreclosure sale. (CR 109-112). On April 6, 2010, the Property was sold at foreclosure sale. The Substitute Trustee's Deed reflects that PNC was the mortgage servicer at the time of sale. (CR 113-114).[10]

What apparently confused the Trial Court, at summary judgment, was the Howards' smoke and mirrors argument surrounding an errant Assignment (CR 100-101) executed by National City Bank of Indiana assigning the Deed of Trust from one if its own divisions to one of its own wholly owned subsidiaries in 2008. The Howards argued that if National City Bank of Indiana had assigned away its interest, then it no longer possessed standing to appoint a substitute trustee (addressed in the section below) and also no longer possessed standing to foreclose.

The Trial Court misapplied Texas law in holding, "National City Mortgage, a Division of National City Bank of Indiana was not a party to, and had no right, title,

---

[9] *See Martins v. BAC Home Loans Servicing, L.P.,* 722 F.3d 249, 255 (5th Cir.)(summarizing Texas law granting mortgagee and mortgage servicer authority to foreclose).

[10] PNC admittedly described itself improperly when it used its pre-merger name (National City Mortgage…) as the mortgagee listed in the substitute trustee's deed.

or interest in the Note and Deed of Trust at issue in this case at the time of the appointment of the substitute trustee, at the time the home was posted for foreclosure on March 15, 2010, or at the time of the actual foreclosure sale on April 6, 2010." (CR 518-520). The Trial Court failed to appreciate that National City Bank of Indiana, National City Bank and PNC were all merged with and into each other; and that successors by merger do not need any special assignment to memorialize a transfer of the Deed of Trust or Note.

> Texas statutory law specifically provides that upon the merger of entities,
>
> [A]ll rights, title, and interests to all real estate…. owned by each organization that is a party to the merger is allocated to and vested … in one or more of the surviving or new organizations as provided in the plan of merger **without**:
>
>> (A) reversion or impairment;
>> (B) **any further act or deed; or**
>> (C) **any transfer or assignment having occurred.**

Tex. Bus. Org. Code §10.008(2). Federal law governing the merger of national banks into national banks also provides that "[a]ll rights, franchises, and interests of the individual merging banks or banking associations in and to every type of property (real, personal and mixed) and choses in action shall be transferred to and vested in the receiving association by virtue of such merger without any deed or other transfer." 12 U.S.C. §215a(e); also see *Ermisch v. HSBC Bank, N.A.,* 2015 WL 12862878 (W.D. Tex. Feb. 9, 2015). In addressing the above statutory law to PNC's merger history litigated in a similar case to this matter, the United States District

23

Court for the Western District of Texas held, "NCMC [National City] was merged into PNC. As the successor, PNC acquired the Note and Plaintiff's indebtedness, and "stepped into the shoes" of NCMC." *Carroll v. PNC Bank, N.A.*, 2014 WL 12530951 (W.D. Tex. 2014).

Both Texas state and federal courts have held that a successor by merger *automatically* acquires its predecessor status as the lender. *See, Lewis v. Wells Fargo Bank,* 939 F. Supp. 2d 634, 638 (N.D. Tex. 2013)("By virtue of its successor status, [defendant] also has the status of Lender under the deed of trust"); *Marban v. PNC Mortg.,* 2013 WL 3356285, at *5 (N.D. Tex. 2013)(holding that upon merger the surviving entity automatically acquired the predecessor's status as Lender and mortgagee); *Salazar v. BAC Home Loans Servicing, L.P.,* 2012 WL 995296, at *4 (N.D. Tex. 2012)( holding that as the successor in interest to the original lender, the defendant became "the holder of the Note and Deed of Trust for the property at issue"); *Wasserberg v. Flooring Servs. of Texas, L.L.C.*, 376 S.W.3d 202, 207 (Tex. App. – Houston [1st Dist.] 2012, no pet.)(holding that under Texas law, all rights of parties to merger are allocated to and vested in the surviving entity without need of formal transfer or assignment); *Croteau v. CitiMortgage, Inc.,* 2014 WL 119968 (E.D. Tex. 2014)(holding no assignment necessary between merging entities to transfer Note and Deed of Trust).

The Trial court erred in determining that PNC (whether as the mortgagee or its own mortgagee servicer) lacked the ability to administer the foreclosure. The merger history is a public record and Ms. Howard has judicially admitted that PNC was her mortgagee at all relevant times when the Notice of Acceleration, Notice of Sale and the sale itself occurred. PNC asserts that the Partial Summary Judgment should be set aside and this case remanded for a trial on the merits.

## B. The Substitute Trustee was Properly Appointed.

As a result of mistake or accident on the part of National City / PNC, an Appointment of Substitute Trustee was filed in the Collin County Real Property Records in June of 2009. (CR 107). The Appointment was mistakenly filed by National City / PNC describing itself by its pre-merger name, that being "National City Mortgage, a Division of National City Bank of Indiana." Given the error, the Howards' presented the shallow *headnote only* argument that the pre-merger entity was without authority to appoint a substitute trustee when it did because the entity had already been merged out of existence. And, a trustee's sale conducted by a trustee appointed without authority results in a void foreclosure sale. For the above-stated reason, the Trial Court granted Partial Summary Judgment in favor of the Howards voiding the April 2010 foreclosure sale. (CR 518-520).

The Howards based their argument on this Court's prior holding in *Burnett v. Manufacturer's Hanover Trust Co*., citing the case for only the proposition that,

25

Texas cases reveal that a foreclosure sale by a person not properly appointed as a substitute trustee according to the terms of the deed of trust is not merely an irregularity in the foreclosure proceedings. Rather such sales have been declared void because they are not conducted within the authority conferred by the deed of trust.

*Burnett v. Manufacturer's Hanover Trust Co*., 593 S.W. 2d 755 (Tex. App. – Dallas, 1979). Unfortunately, the Howards' headnote quotes reveal only half of this Court's holding in *Burnett*. A studied reading of *Burnett,* reveals as Paul Harvey would say, the rest of the story. This Court went on to hold,

We hold that if the person purporting to act as substitute trustee has not been properly appointed in accordance with the deed of trust, he is not authorized to sell the property … *When the appointment of a substitute trustee is authorized by the terms of the deed of trust, the details set forth in the deed of trust must be strictly followed.*

*Id.* at 757 (emp. added).

The Trial Court was required, under *Burnett*, to review the Deed of Trust to determine what requirements (if any) were necessary to appoint a substitute trustee by the beneficiary, and then determine if those requirements were carried out. The Howard Deed of Trust plainly states that a substitute trustee may be appointed, "without the necessity of any formality other than a designation by Lender in writing." (CR 96). As such, whether the recorded Appointment (CR 107) is in error is because the formal Appointment was not even necessary.

All that was required for the proper appointment of a substitute trustee is that it be memorialized some way "in writing." PNC adequately designated Greg

Bertrand "in writing" as one of the substitute trustees within PNC's Notice of Acceleration mailed to Ms. Howard. (CR 108-112).[11] Given the foregoing, even if PNC's Notice of Appointment of Substitute Trustee dated June 2009 (CR 107) was defective it is of no consequence given that PNC subsequently re-designated Greg Bertrand as the Substitute Trustee in writing within PNC's March 12, 2010 Notice of Acceleration mailed to Ms. Howard. (CR 108-112). The Howards' own summary judgment evidence disproved the very claim they sought to establish. (CR 108-112).

## C. Notice of a foreclosure is effective upon mailing and is not contingent on receipt.

The Court erred in applying the wrong statutory standard regarding the "Notice Requirement" due a borrower prior to a foreclosure sale. Regarding a Notice of Substitute Trustee's Sale, as controlled by §51.002 of the Texas Property Code, Notice is deemed sufficient upon the *mailing* of the Notice, not upon the *receipt* of the Notice. The sole factual evidence submitted by the Howards, on the issue in support of their summary judgment motion, was affidavit testimony of Mr. Howard stated, "I *did not receive* a notice of substitute trustee's sale regarding the April 6, 2010 sale date…" (CR 77-78).

---

[11] The Notice of Acceleration to Ms. Howard was sufficient to serve as the notice of acceleration to both Mr. and Mrs. Howard. The Deed of Trust specifically provides, "Any notice given to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed …. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. (CR 93).

27

Section 51.002 of the Texas Property Code specifically addresses how a notice of a substitute trustee sale is to be delivered. Section 51.002(e) states in relevant part:

> (e)   Service of a notice under this section by certified mail is **complete when the notice is deposited** in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address. The affidavit of a person knowledgeable of the facts to the effect that service was completed is prima facie evidence of service. *Id.*(emp. added).

Tex. Prop. Code §51.002. (emp. added).

In mirroring §51.002, the Deed of Trust contains language stating that: "If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and recording the notice at least 21 days prior to sale as provided by applicable law. Lender shall mail a copy of the notice of sale to Borrower in the manner prescribed by applicable law." (CR 96). In this case the applicable law is the Texas Property Code referenced above, which clearly states that notice is "complete when the notice is deposited in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address."

The Houston Court of Appeals (1st Dist.) has previously addressed this exact issue as to when service of a Notice of Foreclosure Sale is complete. In *Calegon v. 2009 SWE, LLC,* the Houston Court held,

> Calegon next asserts that she did not receive the letter or notice at her home address. 2009 SWE correctly responds that "[t]he dispositive inquiry under section 51.002(e), however, it not *receipt* of notice, but,

28

rather, *service* of notice." *Adebo v. Litton Loan Servicing, L.P.*, No. 01–07–00708–CV, 2008 WL 2209703, at *4 (Tex. App.–Houston [1st Dist.] May 29, 2008, no pet.) (mem. op.) (citing TEX. PROP. CODE ANN. § 51.002(e)). **Thus, Calegon's alleged non-receipt of the notice does not create a fact issue about whether 2009 SWE satisfied the notice requirements of Texas Property Code section 51.002.**

*Calegon v. 2009 SWE, LLC,* 2009 WL 4288076 (Tex. App. – Houston [1st Dist.] 2017) (emp. added); *relying on* §51.002(e); *also see, WMC Mortg. Corp. v. Moss,* 2011 WL 2089777, at *7 (Tex. App. – Houston [1st Dist.] 2011, no pet.).

Moreover, John Howard's testimony that he did not receive a notice constitutes no evidence as a matter of law that notice was not mailed. This exact question was before the Beaumont Court of Appeals in *Stanley v. CitiFinancial Mortg. Co.*, 121 S.W.3d 811, 817 (Tex. App.—Beaumont 2003, pet. denied) (holding an affidavit denying receipt "does not state facts pertaining to the statutory requirements, i.e., whether the debt holder's records contain the last-known address of the debtor, and whether such notice was deposited in the U.S. Mail, certified mail, return receipt requested"); Tex. Prop. Code § 51.002.

In line with *City of Houston v. Clear Creek Basin Authority,* PNC responded to the Howards' motion for summary judgment that the proof offered (failure to *receive* the notice) is legally insufficient to establish that notice was improperly given by PNC. As provided by the Texas Supreme Court in *City of Houston,*

> the movant must still establish his entitlement to a summary judgment on the issues expressly presented to the trial court by conclusively proving all essential elements of his cause of action or defense as a

29

matter of law. *See Swiley v. Hughes,* 488 S.W.2d 64, 67 (Tex. 1972). Summary Judgments must stand on their own merits, and the non-movant's failure to answer or respond cannot supply by default the summary judgment proof necessary to establish the movant's right.

*City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671 (Tex. 1979).

The Court's error in applying the wrong standard in construing when Notice of Foreclosure Sale[12] is effectively sent, was on a matter of extreme relevance in determining if the foreclosure sale was properly conducted. The Court's erroneous application of the law resulted in the rendition of an improper summary judgment that requires reversal.

---

[12] For reasons unknown, the Howards have complicated the Trial Court's analysis of the 2010 Notices of Acceleration and Sale by including in the record various immaterial notices of acceleration from 2009 that had been abandoned. The abandoned 2009 acceleration is of no relevance. It is true that the parties stipulated at trial that the 2009 Notice of Acceleration was properly given at the time, (CR 801)**,** but the 2009 acceleration was subsequently abandoned when Amy Howard filed a Chapter 13 bankruptcy case on August 31, 2009. Chapter 13 effectively deaccelerates all prior accelerations. E.g., *Grubbs v. Houston First Am. Sav. Ass'n*, 730 F.2d 236, 241 (5th Cir. 1984) (holding that Chapter 13 debtors bankruptcy de-accelerated a pre-petition acceleration to allow the debtor to cure a default under the 11 U.S.C. 1322(b)(3) or (b)(5); *In re Taddeo*, 685 F.2d 24, 29 (2d Cir. 1982). Moreover, when PNC moved for relief from the automatic bankruptcy stay to allow PNC to proceed with foreclosure, the Howards made an enforceable agreement with PNC to abandon the foreclosure in consideration for the Howards' promise to make periodic payments in specified amounts. (RR. Vol. 3, Defendants' Exhibit 26). Their agreement is embodied in a consent order the bankruptcy court signed and entered on the docket on January 25, 2011. [Id.] [Docket No. 51 and 55 in Case No. 09-35705, In the United States Bankruptcy Court for the Northern District of Texas]. A consent order is a binding contract between the parties and should be construed as a contract. *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 236–37, 95 S.Ct. 926, 43 L.Ed.2d 148 (1975). The consent order further memorialized the abandonment of the 2009 acceleration. It is for this reason new notices of acceleration were sent in March of 2010. (RR. Vol. 3, Exhibit 21).

**D.** **A Wrongful Foreclosure Claim requires a showing of Both an Irregularity with the Sale Process <u>and</u> an inadequate Sale Price.**

The Howards' Third Amended Petition (CR 58-66) was their operative pleading at the time the Howards' moved for summary judgment. Within the petition, the Howards' "[S]eek to set aside Defendant's void foreclosure of the Property…" (CR 59). In moving for summary judgment on their wrongful foreclosure claim[13] the Howards' were required to show, "(1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate sales price; and (3) a causal connection between the defect and the grossly inadequate selling price." *Charter Nat'l Bank – Houston v. Stevens,* 781 S.W.2d 368, 371 (Tex. App. – Houston [14th Dist.] 1989, writ denied). Even if the Howards are correct that PNC's accidental use of its pre-merger name within either the foreclosure documents (the Appointment, Notice of Acceleration, Notice of Foreclosure Sale, or the Foreclosure Sale Deed), such an error did not result in an inadequate sale price at foreclosure. As the Beaumont Court of Appeals explained in *Townsend v. Barrett Daffin Frappier Turner & Engel, LLP,*

> Townsend did not allege facts that describe a defect in the foreclosure proceedings that caused a grossly inadequate selling price. **Without a causal connection between the alleged defect and the allegedly**

---

[13] PNC recognizes the difference between a sale held without authority and a sale conducted with authority to act, but irregularities occurring with the sale. To the extent the Howards' are asserting that the irregular way in which PNC described itself within the Appointment of Substitute Trustee, Notice of Acceleration, Notice of Foreclosure Sale and/or the Substitute Trustee's Deed is an irregularity that impacted the sale, then PNC asserts no inadequate sale price resulted from the irregularities thereby negating the Howards' claim.

31

**inadequate sale price for the property, Townsend has no wrongful foreclosure claim.**

*Townsend v. Barrett Daffin Frappier Turner & Engel, LLP,* 2013 WL 5874607 at *8 (Tex. App. – Beaumont 2013)(emp. added)(internal citations omitted). "A claim for 'wrongful foreclosure' is not available based merely on showing a defect in the foreclosure process; it is also necessary that there be an inadequate selling price resulting from the defect." *See, Farrell v. Hunt*, 714 S.W.2d 298, 299 (Tex. 1986).

The Howards fail to even allege that the Property sold for an inadequate price at sale. In fact, the uncontroverted evidence establishes, a matter of law, that the sale price of $825,000.00 is not grossly inadequate. As observed by the United States Fifth Circuit Court of Appeals, "Texas cases establish that a foreclosure price exceeding 50% is not grossly inadequate." *Water Dynamics, LTD. v. HSBC Bank USA, Nat. Ass'n,* 509 Fed. Appx. 367 (5th Cir. 2013) citing *Terra XXI, Ltd. v. Harmon,* 279 S.W.3d 781, 788 (Tex. App. – Amarillo 2007); *Richardson v. Kent,* 47 S.W.2d 420, 425 (Tex. Civ. App. – Dallas 1932). The reality is that the Property sold for 90% of its appraised value at the time of sale. Compare*, Substitute Trustee's Deed* (RR Vol. 3, Defendant's Exhibit 22) *to Tax Appraisal for 2010* (RR. Vo1. 3, Defendant's Exhibit 29).

The Trial Court erred in granting summary judgment in favor of the Howards, striking down PNC's foreclosure sale. PNC had the authority to act as it did in

conducting the foreclosure sale. What the Howards hope to achieve is a free home. In seeking the trifecta, the Howards sought to establish that the Note was properly accelerated (so limitations would begin to run) but that a foreclosure sale was never properly held (so that limitations would expire on PNC's right to foreclose its Deed of Trust lien). The Trial Court erred in applying Texas black letter law in giving the Howards a free million-dollar home.[14]

---

[14] Even if the Trial Court was correct in its factual determination that John Howard did not receive proper Notice of Acceleration and Notice of Sale, the only legal conclusions that can be drawn from that factual finding is that the "2010 Notice of Acceleration" was ineffective to cause the acceleration of the debt (because notice was not properly given). It follows that without a proper acceleration of the debt, the four-year limitation period under Tex. Civ. Prac. & Rem. Code §16.035 did not commence to run and PNC would therefor still possess the right to enforce its Deed of Trust lien.

The Howards' summary judgment proof establishing that the debt was properly accelerated in 2010 is also lacking. As most recently stated by the Fort Worth Court of Appeals, "Acceleration of the amount due on a loan is a two-step process requiring clear and unequivocal notices of (1) intent to accelerate and (2) acceleration." *NSL Property Holdings, LLC v. Nationstar Mortgage, LLC,* 2017 WL 3526354 (Tex. App. – Fort Worth 2017). There is no Notice of Intent to Accelerate within the Howards summary judgment proof regarding the 2010 acceleration. Without a proper Notice of Intent to Accelerate there can be no acceleration (resulting again in the reality that limitations on enforcement of the Deed of Trust lien did not commence in 2010). It is anticipated the Howards will argue that the 2009 Notice of Intent to Accelerate is sufficient to serve as the notice of intent for the 2010 acceleration. However, the Fifth Circuit, less than two weeks ago, made an Erie guess holding that when an acceleration is abandoned (such as the 2009 acceleration being abandoned in this case) a *new* notice of intent to accelerate is required to be sent before the debt can be re-accelerated. *See, Wilmington Trust, N.A. v. Rob,* 2018 WL 2304600 (5th Cir. May 21, 2018).

## III.    ISSUE NO. 3

**Did the Trial Court err by failing to grant judgment in favor of Appellants on its claim for equitable subrogation despite the totality of the stipulated evidence establishing Appellants' right to subrogation?**

Even if the Trial Court had properly determined that PNC's Deed of Trust lien is void, PNC is still entitled to equitable subrogation. Specifically, to the extent proceeds were used from the 2005 loan origination to pay off any prior valid lien interest, equitable subrogation provides that PNC steps into the shoes of the prior lender, and assumes the prior lender's lien position.

**Standard of Review.** The review of the Trial Court's Final Judgment denying PNC's equitable subrogation claim is reviewed on appeal as follows, "[W]e review [the Trial Court's] factual findings under a sufficiency of the evidence standard and review [the Trial Court's] conclusions of law de novo." *Rourk v. Cameron Appraisal Dist.*, 305 S.W.3d 231 (Tex. App. – Corpus Christi 2009). PNC's entitlement to equitable subrogation was established by the stipulated evidence. Given the stipulated evidence, the only question is whether the stipulated evidence established each element of PNC's claim, and whether the Trial Court in receiving the stipulated evidence properly drew the correct conclusion of law from the evidence.

Undisputed at trial was the stipulated evidence that the Howards obtained the $894,000.00 Note to pay off and refinance two pre-existing loans secured by liens

against the Property. The amount of the Note used to pay off the prior secured loans was $888,282.25. (CR 800). The trial evidence also established, in addition to PNC being subrogated to the prior lender(s) liens, that PNC is subrogated to the ad valorem taxing authorities as PNC paid $174,000 to satisfy ad valorem tax liens that the Howards failed to pay in violation of their Deed of Trust. The evidence at trial was both undisputed and irrefutable.[15] The Trial Court's refusal to grant judgment in favor of PNC on its claim of equitable subrogation is in direct conflict with the factual and legal sufficiency of the evidence before the Court at the time of trial.

"Texas has long recognized a lienholder's common law right to equitable subrogation. The doctrine allows a third party who discharges a lien upon the property of another to step into the original lienholder's shoes and assume the lienholder's right to the security interest against the debtor. The doctrine of equitable subrogation has been repeatedly applied to preserve lien rights on homestead property." *LaSalle Bank Nat. Ass'n v. White*, 246 S.W.3d 616, 619-20 (Tex. 2007) (citing *Benchmark Bank v. Crowder*, 919 S.W.2d 657, 661 (Tex.1996)). In *Benchmark* and again in *LaSalle*, the Texas Supreme Court "honored equitable subrogation claims against homestead property when a refinance, even though

---

[15] Under the loans, the Howards were obligated to pay ad valorem taxes and provide insurance to keep the property insured. (RR. Vol. 3, Defendants' Exhibit 6, ¶4). After March 24, 2005, National City Bank of Indiana and its merger successors, National City Bank and PNC Bank, N.A. paid at least $174,531.64 to extinguish senior priority ad valorem tax liens for the Howards' benefit and which tax liens the Howards were required to pay and remove. (RR Vol. 3, Defendant's Exhibits 29, 31, 32).

unconstitutional, was used to pay off valid liens." *Id.* The Court reasoned that to hold

otherwise "would defeat the purpose of homestead protection", stating:

> Homestead owners must have the ability to renew, rearrange, and readjust the encumbering obligation to prevent a loss of the homestead through foreclosure . . . Without equitable subrogation, lenders would be hesitant to refinance homestead property due to increased risk that they might be forced to forfeit their liens.

*Id.* at 620.

The Texas Supreme Court has "emphasized that, '[o]nce valid, the lien does

not become invalid against the homestead simply because the original debt has been

refinanced.'" *LaSalle Bank Nat'l Ass'n*, 246 S.W.3d at 620 (quoting *Benchmark

Bank v. Crowder*, 919 S.W.2d 657, 661 (Tex. 1996)). In short, the goal of equitable

subrogation is to put the borrower back in essentially the same position he was in

immediately before the transaction at issue occurred. *See In re Rubarts*, 896 F.2d

107, 115 (5th Cir. 1990) (noting that all the lender "gains by operation of subrogation

is the lien ... that it had prior to the subject questionable transaction"); *Texas

Commerce Bank Nat'l Ass'n v. Liberty Bank*, 540 S.W.2d 554, 557 (Tex. Civ.

App.—Houston [14th Dist.] 1976, no writ) (observing that "the appellant stood in

exactly the same position as before the transaction"). Applying equitable

subrogation in this case will accomplish the purpose of the doctrine, placing the

Howards in the same position they were in before the prior liens totaling

$888,286.25 were paid off.

Where a lien is created by equitable subrogation, the subrogated lien is in the amount of the amount of the pre-existing lien that was paid off, plus legal interest from the date of payoff at the legal rate of six percent per annum. *Chase Home Fin., L.L.C. v. Cal W. Reconveyance Corp.*, 309 S.W.3d 619, 629 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *In re Harmon*, 444 B.R. 696, 711 (Bankr. S.D. Tex. 2011), *on reconsideration,* 10-33789, 2011 WL 1457236 (Bankr. S.D. Tex. Apr. 14, 2011) ("When a party qualifies for equitable subrogation, the party is entitled to a lien in the same amount as the previous lien plus 6% interest beginning at the time of the payoff of the previous lien."). If a lienholder is equitably subrogated to a prior lien and both liens contain powers of sale, the subrogated lienholder is authorized to exercise its rights by virtue of a non-judicial foreclosure of its deed of trust. *Providence Institution for Savings v. Sims*, 441 S.W. 2d 516, 520 (Tex. 1969); *Leonard v. Brazosport Bank of Texas*, 628 S.W. 2d 216, 220 (Tex. App—Houston [14th Dist.] 1982 , writ ref'd n.r.e.).

Equitable subrogation applies "in every instance in which one person, not acting voluntarily, has paid a debt for which another is primarily liable and which in equity should have been discharged by the latter." *Frymire Eng'g Co. ex rel. Liberty Mut. Ins. Co. v. Jomar Int'l, Ltd.*, 259 S.W.3d 140, 142 (Tex. 2008); *Murray v. Cadle Co.*, 257 S.W.3d 291, 299 (Tex. App.—Dallas 2008, pet. denied); *see Bank of Am. v. Babu*, 340 S.W.3d 917, 922 (Tex. App.—Dallas 2011 rev. denied); *Interfirst Bank*

*Dallas, N.A. v. U.S. Fid. & Guar. Co.*, 774 S.W.2d 391, 397 (Tex. App.-Dallas 1989, writ denied). The Texas Supreme Court even directs courts to apply equitable subrogation to prevent unjust enrichment as the case is herein.[16]

The Dallas Court of Appeals, among other courts, has held that in cases like this, where the evidence establishes the right to equitable subrogation, the trial court errs materially and abuses its discretion in declining to grant that relief. *Bank of Amer. v. Babu*, 340 S.W.3d 917, 922 (Tex. App.—Dallas 2011, pet. denied) (holding that court abused its discretion in failing to grant equitable subrogation relief as a matter of law) (quoting *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985)(for its holding that "a trial court abuses its discretion when it acts arbitrarily or unreasonably without reference to any guiding rules and principles").

Continuing, the Dallas Court of Appeals has previously held that "[t]he right of subrogation is not dependent upon contract, agreement, or stipulation, **or upon privity** or strict suretyship; but it is a mode which equity adopts to compel the ultimate payment of a debt, by one who, in justice, equity, good conscience, ought

---

[16] PNC asserted an unjust enrichment claim in this case which was denied by the Trial Court. *E.g. Faires v. Cockerell*, 88 Tex. 428, 31 S. W. 190, 194, (Tex. Comm'n App. 1932, opinion adopted) (observing that "[p]erhaps the courts of no state have gone further in applying the doctrine of subrogation than has the court of this state"); *see Frymire Eng'g Co. ex rel. Liberty Mut. Ins. Co. v. Jomar Int'l, Ltd.*, 259 S.W.3d 140, 142 (Tex. 2008); *First Nat'l Bank of Kerrville v. O'Dell*, 856 S.W.2d 410, 415 (Tex. 1993).

to pay it. *Galbraith-Foxworth Lumber Co. v. Long*, 5 S.W.2d 162, 167 (Tex. Civ. App.—Dallas 1928), writ refused (Nov. 21, 1928).

The Texas Supreme Court has held that where a party seeking equitable subrogation paid a debt under circumstances that "would lead to the belief" such payment would protect that party's interest, such party was not a "volunteer" an obligation to subrogate such party to lien at issue should be implied. *Oury v. Saunders,* 77 Tex. 278, 13 S.W. 1030, 1031 (Tex. 1890)); *Murray v. Cadle Co.*, 257 S.W.3d 291, 301 (Tex. App.—Dallas 2008, pet. denied)( A refinancing mortgagee's acts in paying off prior liens establishes the element of involuntariness as a matter of law). The same principles apply where tax liens are concerned. *Smart v. Tower Land & Inv. Co.,* 597 S.W.2d 333, 338 (Tex. 1980) (holding that a mortgagee who pays taxes does so to protect its security and is an involuntary payor in law).

The Trial Court erred in failing to grant judgment for PNC on its equitable subrogation claim(s).[17] Clear, convincing, uncontroverted and stipulated evidence

---

[17] It is anticipated that the Howards may suggest that PNC's equitable subrogation claim is barred by limitations. The Howards are incorrect. The Texas Supreme Court has explained that because there is no specific statute of limitations for subrogation actions in Texas, "such actions are generally subject to the same statute of limitations which would apply had the action been brought by the subrog[or]" because "rights conferred by subrogation are entirely derivative of the subrogor's interests, to which the subrogee merely succeeds." *Guillot v. Hix*, 838 S.W.2d 230, 232-33 (Tex. 1992); *see also Brown v. Zimmerman*, 160 S.W.3d 695, 700 (Tex. App.—Dallas 2005, no pet.) ("There is no specific statute of limitations for subrogation actions."). Therefore, the court must look to the nature of the subrogation action brought by PNC. The subrogation action brought by PNC is one for judicial foreclosure. As such and because the claim is one for the recovery of real property, under a real property lien or the foreclosure of a real property lien (*i.e.*, based on the vendor's lien, superior title, and/or purchase-money lien), it is governed by the four-year statute of limitations in section 16.035(a) of the Texas Civil Practice and Remedies Code.

admitted at trial establishes PNC's right to equitable subrogation as a matter of law.

While PNC disagrees with the Trial Court that its Deed of Trust lien is void, even if the Deed of Trust lien were void, PNC would still be entitled to equitable subrogation. Specifically, to the extent proceeds were used from the 2005 loan origination to pay off a prior valid lien interest, equitable subrogation provides that PNC steps into the shoes of the prior lender, and assumes the prior lender's lien position. Further, to the extent PNC pay ad valorem taxes on preservation of the Property it is subrogated to those tax liens as well.

Even if all of PNC's other claims failed, the Trial Court should have still found at trial that PNC was entitled to be equitably subrogated to the prior lienholders in the amount of $888,265.25 (plus interest) and subrogated to the tax lienholder in the amount of $174,000.00.

---

*See Brown*, 160 S.W.3d at 701 (holding that "[t]o the extent [the subrogation action] is a suit for the recovery of real property under a real property lien, it is governed by the four-year statute of limitations" in section 16.035(a)). The Amarillo Court of Appeals has been presented with this exact issue and has held that the limitations begins to run upon the maturity of the note that was paid off, herein that being the date the prior notes were scheduled to fully mature (that date being in the late 2020's). *See, Lusk v. Palmer,* 114 S.W.2d 677 (Tex. Civ. App. – Amarillo 1938, writ dism'd)(limitations could not be successfully urged against the subrogation pleaded until four years after the maturity dates of the notes paid by Mrs. Parmar); *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001)("[i]f a note or deed of trust secured by real property contains an optional acceleration clause, default does not ipso facto start limitations running on the note. Rather, the action accrues only when the holder actually exercises its option to accelerate).

## IV.    ISSUE NO. 4

**Did the Trial Court err by failing to grant judgment in favor of Appellants on its suit on the Note despite the totality of the stipulated evidence establishing Appellants' right to collect on the Note separate from its right to enforce its in rem Deed of Trust lien?**

The Court erred in determining that Defendant PNC was not entitled to recover on its suit on the Note. The evidence before the Court on the suit over the note established conclusively that: (1) PNC is the holder of the Note (the Note being in the physical possession of PNC and endorsed in blank), (2) Plaintiffs default in paying the Note, (3) all conditions precedent have occurred to PNC's right to recover under the Note, and (4) suit was filed within the applicable statute of limitations. As such, no legally or factually sufficient evidence exists within the record upon which the Court could have denied the requested relief.

**Standard of Review.** The review of the Trial Court's Final Judgment denying PNC's claim on its Note is reviewed on appeal under the same standard as PNC's claim for equitable subrogation is reviewed. The Trial Court's factual findings are reviewed under a sufficiency of the evidence standard and review and the Trial Court's conclusions of law are reviewed de novo." See, *Rourk v. Cameron Appraisal Dist.*, 305 S.W.3d 231 (Tex. App. – Corpus Christi 2009). PNC's entitlement to the recovery on its Note is established by the stipulated evidence.

Even if the Trial Court was correct in concluding that PNC's Deed of Trust lien is void, PNC still possessed the right to collect on its Note. As stated by the Austin Court of Appeals, "[T]he note and the deed-of-trust lien afford distinct remedies on separate obligations—the note against the borrower and the lien against the real property. *See Stephens v. LPP Mortg.,* 316 S.W.3d 742, 747 (Tex. App.- Austin 2010, pet. denied). For this reason, a lien creditor may pursue foreclosure of a lien against real property under the deed of trust independent of any personal action against the borrower for collection on the note. *Id.* As further explained by the Austin Court of Appeals in *Bierwirth v. BAC Home Loans Servicing, L.P.,*

> Texas law differentiates between enforcement of a promissory note and foreclosure. Foreclosure enforces the deed of trust, not the underlying note. Foreclosure is an independent action against the collateral and may be conducted without judicial supervision. Enforcement of the note, on the other hand, is a personal action against the signatory and requires a judicial proceeding.... Texas courts have refused to conflate foreclosure with enforcement of a promissory note.

*Bierwirth v. BAC Home Loans Servicing, L.P.,* 2012 WL 3793190, (Tex. App. – Austin 2012) (pet. denied).

Perhaps the Trial Court denied PNC's right to collect on the Note as it believed limitations had run on PNC's right to enforce collection. However, unlike the four-year limitation on a lender's right to enforce a deed of trust lien after maturity, an action on a Note must be brought within six years. See, Tex. Civ. Prac. & Rem. Code §3.118 (regarding limitations); Tex. Bus. & Comm. Code §3.104 (providing

42

that the Note qualifies as a negotiable instrument); *Amberboy v. Societe de Banque Privee*, 831 S.W.2d 793, 801 (Tex. 1992). The undisputed evidence established that PNC brought its suit on the Note on May 14, 2015, a date less than six years after even the earliest date the Howards' claim acceleration of the Note occurred. (CR 804).

In short, the Trial Court's judgment that the Note is "Void and Unenforceable" is particularly perplexing. (CR 901-902). The evidence at trial and stipulations establish the Howards' made, owed and defaulted on the loan. (CR 799-801). The trial evidence established the amount of principal and interest due on the note. (RR. Vol. 3, Defendants' Exhibit 20). The note is endorsed in blank and the Howards' judicially admit that PNC holds the Note.[18] (CR 801-802). These stipulated facts establish PNC's right to recovery on its Note. There was no evidence presented at trial controverting this clear and convincing proof that the Note is valid and enforceable. The Court's "alternative finding" that the note is "Void" is a complete mystery; no pleading and no evidence of any sort was submitted to the Court at any time that would remotely allow such a conclusion. Given the foregoing, the Trial Court erred in failing to grant PNC's requested relief on its suit on the note; the

---

[18] A "holder" is defined in the Texas Business and Commerce Code as "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." Tex. Bus. & Com. Code Ann §1.201(b)(21)(A).

43

Court's judgment is unsupported by any legally or factually sufficient evidence on this issue.

## **CONCLUSION**

WHEREFORE, Appellants PNC Mortgage, a Division of PNC Bank, N.A. Successor to National City Bank ("PNC") and National City Mortgage, A Division of National City Bank of Indiana respectfully request that this Court vacate the Trial Court's Partial Summary Judgment and the Trial Court's Final Judgment. PNC request this Court render judgment in favor of PNC on its equitable subrogation claim and remand the case for further trial court proceedings as to PNC's right to enforce its Deed of Trust lien. PNC alternatively requests that this Court direct the Trial Court to file Findings of Fact and Conclusions of Law and thereafter permit PNC to re-brief matters as necessary.

Respectfully submitted,

HOPKINS LAW, PLLC
3809 Juniper Trace, Suite 101
Austin, Texas 78738
(512) 600-4320 – Telephone
(512) 600-4326 – Facsimile
MARK@HOPKINSLAWTEXAS.COM
SHELLEY@HOPKINSLAWTEXAS.COM


By:     _/s/ Mark D. Hopkins_____
Mark D. Hopkins
Texas State Bar No. 00793975
Shelley L. Hopkins
Texas State Bar No. 00796255

44

BARRETT DAFFIN FRAPPIER
TURNER & ENGEL, LLP
Robert D. Forster, II
State Bar No.: 24048470
4004 Belt Line Rd., Suite 100
Addison, Texas 75001
972-340-7901   (Telephone)
972-341-0734   (Facsimile)

Brian Scott Engel
State Bar No.  00789279
3809 Juniper Trace, Suite 205
Austin, Texas 78738
RobertFo@bdfgroup.com
BrianEn@bdfgroup.com

ATTORNEYS FOR APPELLANTS

45

## CERTIFICATE OF SERVICE

Pursuant to Texas Rules of Civil Procedure, I certify that a true and correct copy of the foregoing has been sent on this the 1st day of June 2018 to all parties of record the method indicated below.

**Via E-Service**
J. Neal Prevost
Prevost & Shaff
1518 Legacy Drive, Suite 260
Frisco, Texas 75034
*sdc@prevostandshaff.com*

_____*/s/ Mark D. Hopkins*_____
Mark D. Hopkins

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), the undersigned certifies this brief complies with the type-volume limitations of Texas Rule of Appellate Procedure 9.4. Exclusive of the exemption portions in Texas Rule of Appellate Procedure 9.4(i)(1), the brief contains: **10,859** words.

_/s/ Mark D. Hopkins_
Mark D. Hopkins